[Civ. No. 511. Fourth Appellate District.—December 1, 1931.]

H. H. MORE et al., Respondents, v. THE CITY OF SAN BERNARDINO (a Municipal Corporation), Appellant.

Fred A. Wilson, City Attorney, for Appellant.

Hert, Mussell & Withington for Respondents.

BARNARD, P. J.—The plaintiffs, who owned certain land near the City of San Bernardino, brought this action for the purpose of recovering for damages sustained through the overflow of sewage upon their land. Prior to 1906 the defendant city had discharged its sewage in Warm Creek, which flowed through said city and also through plaintiffs' lands. This method of sewage disposal having become unsatisfactory, on March 19, 1906, the city entered into a contract with one Gregory, under which it was agreed that he would pay $100 a year for the exclusive use of all sewage from the city, the same to be used by him on certain lands situated below the lands belonging to the plaintiffs. Gregory agreed to take and remove this sewage from the existing city sewers at a point near the city limits, and to convey the same by means of a good and sufficient vitrified pipe-line to his own premises. On January 31, 1907, a new agreement was entered into between the city as one party and Gregory and one Langford as the other party, under the terms of which the city was given an easement in an existing pipe-line, which was referred to as "the Gregory and Langford pipe line", and the city was to have the perpetual right to convey the sewage of the city through this pipe-line and deposit the same upon the same land referred to in the Gregory contract. At the same time Gregory and Langford agreed to construct an extension of the pipe-line, and it was agreed that this contract was to supersede the Gregory contract when it was ratified by an ordinance of the city. So far as shown by the evidence, it was never ratified by the city, but it was executed and recorded. On June 21, 1909, the Delta Water Company, to

whom the Gregory contract had been assigned, entered into a new contract with the city under which the provisions of the Gregory contract were extended for a period of twenty-five years, and provision was made for the construction of an additional pipe-line by the Delta Water Company, to care for an increased amount of sewage. It would seem that the interest of the Delta Water Company in the sewage contracts, and in the lands where the sewage was to be used, later passed to the defendant Finance Investment Corporation, although this is not mentioned in the briefs. This action was brought against both defendants as owners and operators of the two outfall sewer lines, for damages consisting of the pollution of domestic and irrigation water, loss of crops, loss of profits in operating a dairy, offensive odors, and loss or depreciation of the value of lands, all alleged to have been caused by the flooding of the plaintiffs' land with sewage water and offal, caused by the overflow of the outfall sewers owned and operated by the two defendants. After a trial the court found for the plaintiffs and awarded them damages in the sum of $1,000 because of odors and stenches caused between August 27, 1927, and August 27, 1928, and the further sum of $150 by reason of the pollution of their domestic supply of water. The court further found that the defendant city was operating said outfall sewer lines and that while so operating said sewer lines they had permitted large quantities of sewage to flow upon the lands of plaintiffs, and that the injuries complained of were not due in whole or in part to any act or omission on the part of the defendant Finance Investment Corporation. The defendant city has appealed from the judgment entered.

The first point raised is that a demurrer to the complaint should have been sustained for three reasons. ■ It is first urged that the complaint was defective in failing to properly allege the presentation of a claim to the city, as required by the appellant's charter. This charter contains a provision that no claim or demand should be the basis of an action against the city "unless a verified claim in writing, clearly specifying the item or items constituting such claim or demand shall be filed with the city clerk, or with the board or commission having jurisdiction to allow or reject the same, at least thirty days prior to the commencement of

such action or proceeding''. A verified claim was filed setting up a claim for damages by reason of allowing sewage to flow upon certain lands owned by the plaintiffs which are particularly described, ''and on lands in the vicinity of said land held under a lease by the claimants herein''. The claim for damages is then itemized as follows: A certain amount for loss in the selling price of milk; an amount for contamination of domestic water; an amount for depreciation in value of the land; an amount for loss of alfalfa; an amount for odors and stenches, it being set forth that the claimants resided upon the lands; and an amount for depreciation in value of certain milk cows. It is argued that this claim, a copy of which was set forth in the complaint, is not one ''clearly specifying the item or items constituting such claim or demand'', since it does not clearly specify ''the act complained of''. It is insisted that the claim should have specified ''whether the act complained of consists of nonfeasance or misfeasance'', and that the appellant was unable to ascertain whether it was charged with improperly maintaining some instrumentality or with improperly doing something, such as constructing ditches or the like. The purpose of such a charter provision is well set forth in 19 Ruling Case Law, at page 1044, where it is said:

''A statute requiring the presentation of a claim against a municipal corporation does not require the statement to be drawn with the technical nicety of a declaration; a substantial compliance with the provisions of the statute is sufficient, and an immaterial variance between such a statement and the declaration subsequently filed is not fatal. When the statute which makes the filing of a claim with the municipal authorities a condition precedent to the maintenance of an action thereon contains no specific requirement that the amount of the claim be set out, the requirement of the statute is satisfied by a statement of the facts upon which the claim is based. The addition of the amount is unnecessary, and, if set forth, mere surplusage, and does not bar recovery of a greater sum. Even when the statute requires the setting forth of the amount claimed, there is authority to the effect that the recovery in the action is not limited to the amount claimed, when notice is required merely in order to furnish the municipal

authorities with an opportunity to make a timely investigation of the facts upon which the claim is based.''

We think the claim as filed, in which the items of damage are clearly specified, fully complies with the charter provision and that it was unnecessary to include therein any further description of the acts complained of than the one set forth, to the effect that these items of damage were claimed because of the act of the city in allowing sewage water to flow upon the lands described (*Wagner* v. *City of Seattle,* 84 Wash. 275 [Ann. Cas. 1916E, 720, 146 Pac. 621]; *Coen* v. *City of Los Angeles,* 70 Cal. App. 752 [234 Pac. 426]; *McCann* v. *Sierra Co.,* 7 Cal. 121).

█ It is next urged that the complaint was defective in that it alleged joint ownership and operation of the outfall sewers. It is contended that sewers are either private or public, that joint ownership thereof by a city and a private party would be contrary to law, and that the joint ownership and joint operation thereof would be beyond the power of a municipality. It is thus maintained that a city may not be held liable for maintaining a nuisance, if it is maintaining such a nuisance illegally. Under the circumstances shown, this claim is without merit. It was found by the court that the defendant city operated the two outfall sewers, that the corporation defendant owned the same but had nothing to do with the sewage until it was delivered by the city to their land. The facts were peculiarly within the knowledge of the defendants and the complaint was sufficient to put them to their defense.

█ The third attack upon the complaint is that two causes of action were properly joined, one for the breaking of the sewer and the other for digging ditches. It is alleged in the complaint that the defendants had permitted the sewer lines to become broken and clogged at and near the lands of the plaintiffs, and had caused and permitted the sewage to overflow. It is also alleged that the defendants negligently dug ditches to conduct this overflow sewage from the vicinity of the pipe-lines upon and along the lands of the plaintiffs, and thereby caused and permitted large quantities of such sewage to be deposited upon these lands. Both of these acts of negligence related to the cause of action attempted to be set up, and we think the failure to set them

up as two separate causes of action was not fatal to the complaint (*Razzo* v. *Varni*, 81 Cal. 289 [22 Pac. 848]).

■ It is next urged that the court failed to find on material issues in two respects. First, that the court failed to make any finding respecting the ownership by the appellant city of the outfall sewer lines. The court found that the two outfall sewer lines were owned by the defendant corporation, but that said corporation had no control over the same and had nothing to do with the sewage therein until the same was delivered by the appellant city to their lands. The court also found that the two sewer lines were operated by the appellant city in connection with their city sewage system and that sewage was carried through said lands by the appellant city and delivered by it to the lands of the defendant corporation. The finding is sufficient to support the judgment in this respect, and that a more definite finding was not made upon the point raised is not material. It is also urged that the court erred in not making a finding respecting the digging of ditches. The court found that the defendant city wrongfully permitted sewage to be deposited upon the lands of the plaintiff, as alleged in paragraph IX of the complaint. Paragraph IX alleged that the defendants wrongfully dug ditches to conduct the overflow sewage upon the lands of the plaintiffs and thereby caused and permitted large quantities of such sewage to be deposited upon said lands. So far as material issues were presented, the finding is sufficient.

■ It is next urged that the evidence is not sufficient to sustain the court's finding that the defendant city operated the outfall sewers, and that such finding is contrary to the evidence. It is urged that the only evidence presented established that these sewer lines were being used by the Delta Water Company and its successors in interest. In support of this proposition, appellant relies upon the three contracts above referred to. In our opinion, an examination of these contracts shows that they contain some evidentiary support for the finding attacked. In the first contract between the city and Gregory dated March 19, 1906, Gregory agreed to "take and remove" all sewage from the existing sewer system of the city and transport and convey the same out of and beyond the corporate limits of the city by means of a vitrified pipe-line placed underground, and

the place of taking is fixed as the outfall of the sewer system then constructed and the outfall of such systems as should thereafter be constructed. Nothing is said in this contract about who should make any necessary repairs to the pipe-line that was to be constructed, but the inference would be that Gregory must take entire charge of the sewage from the city limits. Gregory furnished a bond to secure the faithful performance of this contract, which bond was signed by one J. D. Langford and another. A few months later the second contract was entered into, which was between Gregory and J. D. Langford as first parties, and the appellant city as second party. The first parties granted to the second party the right, privilege and easement of "using, controlling and possessing that certain pipe-line belonging to parties of the first part", describing the pipe-line which had been constructed under the terms of the first agreement. It also provided that the city should have the right to deposit its sewage upon the lands belonging to the first parties, which were described, and that the first parties were to "receive, distribute and use" said sewage upon the said lands. This contract provided that it should take effect upon its execution by the parties and upon it being ratified by an ordinance of the city. No ordinance ratifying the same appears in the record, but the contract was executed and recorded. On June 21, 1929, a subsequent contract with the Delta Water Company was entered into by the city. This contract, after reciting that Gregory and his assigns have constructed a pipe-line for conveying sewage away from the city, and because of the rapid growth of the city "it has become necessary and advisable to either increase the capacity of *its* present pipe-line or to lay another pipe-line supplementing the original one laid by them", provides that an additional pipe-line shall be constructed, the cost of which is to be paid, one-third by the city, and two-thirds by the other party. It is then provided that the Gregory contract should be extended for twenty-five years and that during that time the second party shall "take and receive" all of the sewage from the sewer system or systems of the city. It is then provided that when this supplemental sewer between the city limits and the land of the second party is completed, it shall belong to and be owned by the city, subject to the

rights of the second party to have the sewage flow through the same. While this contract recites that Gregory had assigned "his interest" in the contract of March 19, 1906, to the Delta Water Company, nothing is said as to what had become of the interest of J. D. Langford, who was a party to the contract of January 31, 1907. That contract recited that the pipe-line belonged to Langford and to Gregory, and purported to grant to the city the right to use, control and possess the same. This Delta Water Company contract is somewhat ambiguous in that it refers only to the Gregory contract, while rights are given to the city which presuppose that the city had acquired the interest of J. D. Langford, which is only shown to have been conveyed to the city by the Gregory and Langford contract. And the language of this contract follows the language used in the Gregory and Langford contract in providing that the other party is to "take and receive" the sewage flowing in any part of the city system, in direct contrast to the language used in the original Gregory contract which provided that Gregory was to "receive and remove" the sewage from the city limits. In view of the uncertainties left by the language of these contracts, the subsequent conduct of the parties, as shown by the evidence, is illuminating. One witness, who was superintendent of streets of the appellant city during the time in which this claim arose, testified that he had men repairing these sewers and fixing leaks therein, and that he cleaned out the ditches along the front of plaintiffs' premises so that the sewer water would continue on down. A former superintendent of streets testified concerning records in his office relative to repairs upon the sewer lines in question, and various bills for repairs were admitted in evidence showing repairs upon these sewer lines in a number of different months. The superintendent of streets testified that he kept records of the work done on these sewers; that he was ordered to make repairs thereon by the mayor; that various amounts of work were done under instructions from the mayor; and that no one, other than himself and his men worked on these sewer lines during the time he was street superintendent. He also testified as to certain obstructions in the sewer that were found and removed, and that upon one occasion he was instructed to move one of these sewer lines where it crossed Warm Creek in order to enable a

bridge to be put in. Not only does this evidence indicate that the appellant city interpreted this contract as putting the city in charge of these sewer lines, but it furnishes some support for the finding of the court that the city was actually operating and had control of the lines during the period in question. In considering whether the evidence is sufficient to sustain this finding, it must be remembered that the circumstances involved here are somewhat unusual and that from the very nature of the case, the amount of evidence of operation and control available is not as great as would be the case in reference to the operation of an ordinary instrumentality. This fact justifies a lesser *quantum* of proof than would be justified in many cases. In our opinion the facts shown by the evidence, with the reasonable inferences therefrom, sufficiently sustain the finding complained of.

 It is finally contended that the court erred in awarding damages for odors and stenches. As we understand appellant's argument, it is that the plaintiffs' cause of action was predicated upon damage to real property and since it was found by the court that the plaintiffs' lands were not permanently injured, the only other element of damages that could be considered was diminution in the rental value of the land. The complaint not only set up a claim for damage to the land but also various other items of damage, including one arising from odors and stenches and from the pollution of their water supply. The respondents lived upon the land and the pleadings, evidence and findings justify the award. Respondents were entitled to compensation for all detriment proximately caused by the acts of the defendants (sec. 3333, Civ. Code).

The situation in which respondents were placed without fault upon their part was a most aggravating one, as is in effect conceded by the defense interposed, which, while most resourceful and technical in "passing the buck" between the defendants, is noticeably silent upon such matters as reflect upon the justice of the claim. The trial judge was in the best position to pass upon the weight of the evidence, and this case well illustrates the wisdom of the rule that the findings of the trial court should not be disturbed if there is any evidence at all to sustain them.

The judgment is affirmed.

Marks, J., and Jennings, J., concurred.