[Civ. No. 3660. Fourth Dist. June 4 1947.]

PEARL E. PERRY, Respondent, v. CITY OF SAN DIEGO, Appellant.

J. F. DuPaul, City Attorney, J. H. McKinney, Deputy City Attorney, and Monroe & McInnis for Appellant.

James B. Abbey for Respondent.

MARKS, J.—This is an appeal from a judgment in favor of plaintiff in the sum of $16,500 for damages suffered by her on June 3, 1945, when a picnic shelter at Pacific Beach in the city of San Diego collapsed upon her. It is admitted that the shelter was under the control of and belonged to the city of San Diego and was maintained for the use of people visiting the coast line of Pacific Beach.

Defendant presents four grounds for reversal of the judgment. They are: (1) That the claim filed by plaintiff was legally insufficient as it failed to state any claimed negligence on the part of the city of San Diego or any of its officers, agents or employees; (2) that the evidence failed to show any constructive notice to defendant of the dangerous or defective condition of the shelter, it being admitted that there was no evidence of actual notice thereof; (3) that the trial court erred in failing to instruct the jury on the measure of damages; (4) that the judgment is excessive.

Picnic shelters had been erected along the coast line of San Diego at an undetermined time when the Works Progress Administration was functioning. The one in question was close to the edge of the bluff overlooking the ocean at Pacific Beach. It was rectangular in shape and rested on cement corner blocks on which rested 4″ x 4″ corner posts. These corner posts were joined together at the base at least on three sides with timbers toe-nailed into them. Also on the same three sides they were tied together with other timbers about four feet above those at the base. These two sets of timbers

were joined together with vertical boards making a solid wall about four feet high which served as support to the structure as well as a wind break to those sitting inside. The roof, estimated to weigh between seven and eight hundred pounds, rested on the corner posts and was attached to them by four boards at the corners which were nailed to the corner posts and members of the roof. The landward side of the shelter was open. Benches used as seats were constructed along the inside of the closed sides.

While this was the condition of the shelter when it was constructed, it is admitted that people picnicking on the beach had taken boards from it for use in beach fires and that it was much changed at the time of the accident. One of the witnesses for plaintiff described its condition at the time of the accident, and before, as follows: "All the boards—originally it was closed in on three sides. The boards up about four feet high, all those boards had been knocked off, the stringers taken out that the boards were originally nailed to, and the braces knocked out from up above, leaving the roof of the building just standing there on four posts just like a table on its legs. Q. In other words, there were no braces of any kind holding it up? A. No. Q. And that condition had existed for how long? A. About a year."

Plaintiff, her son, his wife and two children went to the beach on the afternoon of June 3, 1945. About five o'clock they went to the shelter where they remained for not more than half an hour. Plaintiff, her daughter-in-law, one grandchild and one Marion Johnson were seated in the shelter. Just as plaintiff and her relatives were preparing to leave the shelter suddenly and without warning pitched over towards the ocean pinning plaintiff under the roof and seriously injuring her. No cause for this is suggested in the evidence other than the dilapidated condition of the structure. No one touched it and there was a breeze with a velocity of about seven miles an hour blowing in from the ocean. It is evident that the shelter collapsed into this breeze, not away from it.

The verified claim filed by plaintiff contained the following: "That suddenly and without any warning to the undersigned Claimant, the roof of the structure, picnic shelter and building collapsed and fell upon the undersigned Claimant, pinning her underneath said roof and crushing her. . . ."

Defendant argues that under the provisions of section 1981 of the Government Code it was necessary for plaintiff

to allege in her claim that the dangerous or defective condition of the structure was due to the negligence of some officer or agent of the city of San Diego and, that failing to do so, it was legally insufficient to support an action for damages.

Plaintiff argues that the claim is sufficient in stating that the structure suddenly and without warning collapsed as negligence must be implied in permitting the structure to get into such a dangerous and defective condition that such an accident could have happened.

The claim must be held to be sufficient. It is no more specific than the one held sufficient in *Kelso* v. *Board of Education,* 42 Cal.App.2d 415 [109 P.2d 29]. (See, also, *Silva* v. *County of Fresno,* 63 Cal.App.2d 253 [146 P.2d 520]; *More* v. *San Bernardino,* 118 Cal.App. 732 [5 P.2d 661]; *Dillard* v. *County of Kern,* 23 Cal.2d 271 [144 P.2d 365, 150 A.L.R. 1048].) From these authorities it seems clear that California courts have taken a reasonably liberal view of the claim statutes and that where a reasonable attempt is made to comply with the law in good faith and no intent to mislead or conceal appears the claim will be upheld in the absence of anything indicating that the municipality has been mislead, if the claim substantially conforms to the requirements of the statute.

A more compelling argument is found in section 1982 of the Government Code and in section 1 of an act of the Legislature passed in 1931 (Stats. 1931, p. 2475) which specifies what should be stated in a claim, namely, the name and address of the claimant, the date and place of the accident and the extent of the damages or injuries received. The claim filed by plaintiff sufficiently stated each of these necessary items.

It is conceded that defendant had no actual notice of the condition of the shelter so plaintiff's case must of necessity rest on constructive notice. Such constructive notice must depend on the obvious condition of the shelter and its weakening by persons whom defendant terms "vandals" who removed supporting members for use as firewood. According to the witness for plaintiff whom we have already quoted, this condition of weakness was obvious and had probably existed for nearly a year. Other witnesses testified to the weakened condition of the structure for periods ranging from about two months to over one year prior to its collapse.

In *Fackrell* v. *City of San Diego,* 26 Cal.2d 196, at page 206 [157 P.2d 625, 158 A.L.R. 625], it is said:

"Actual notice of a defective or dangerous condition is not required. Constructive notice satisfies the statute. (*Laurenzi*

v. *Vranizan* (1945), 25 Cal.2d 806, 812 [155 P.2d 633]; *Dawson* v. *Tulare Union High School* (1929), 98 Cal.App. 138, 142 [276 P. 424]; *Hook* v. *City of Sacramento* (1931), 118 Cal. App. 547, 553, [5 P.2d 643]; *Bennett* v. *Kings County* (1932), 124 Cal.App. 147, 153 [12 P.2d 47].) Constructive notice is defined by section 19 of the Civil Code as that knowledge of circumstances 'sufficient to put a prudent man upon inquiry as to a particular fact' where 'by prosecuting such inquiry, he might have learned such fact.' The rules governing such constructive notice require reasonable diligence in making inspections for the discovery of unsafe or defective conditions. (*Laurenzi* v. *Vranizan* (1945), *supra*, pp. 811-812; *Nicholson* v. *City of Los Angeles* (1936), 5 Cal.2d 361, 364-365 [54 P.2d 725].)''

While the evidence on the length of time that the shelter had been stripped of its supporting members is conflicting, we are only required to summarize that tending to support the verdict and judgment, as conflicts in the evidence, and its weight, are matters settled in the trial court and not here.

The evidence in the instant case on the question of notice falls within the following rule announced in the case of *Kirack* v. *City of Eureka*, 69 Cal.App.2d 134 [158 P.2d 270].

''The rule is well established that constructive as well as actual knowledge of a dangerously defective sidewalk or street may render a municipality liable for damages for injuries sustained on that account when such defects should be reasonably anticipated by the officers in charge, or when reasonable inspection would have disclosed the dangerous condition. When reasonable minds may differ regarding the question as to whether defective conditions which have existed for sufficient time, under the particular circumstances of a case, will charge a municipality with constructive knowledge thereof, the conclusions of the jury in that regard may not be interfered with on appeal. (Citing cases.)''

As the question of constructive notice to a municipality of a dangerous and defective condition of property is usually one of fact for the trier of fact and as the necessary conclusion of the jury on the question has the support of substantial evidence we cannot disturb it here. (*Silva* v. *County of Fresno*, *supra*.)

The trial court failed to give any instruction on the measure of damages and in summarizing the allegations of the complaint and the statement in the claim filed with the city

stated that plaintiff alleged and claimed damages in the sum of $50,000; that the amount stated in the claim was no evidence of the amount to which plaintiff was entitled, if it was determined she was entitled to recover, but only fixed the limit beyond which she could not recover in any event. In this connection it should be pointed out that neither party proposed or requested any instruction on the measure of damages.

Defendant now argues that it was prejudicial error for the trial judge to fail to instruct on this question on his own motion. ■ In support of this argument defendant cites section 19 of article VI of the Constitution and sections 2061 and 2101 of the Code of Civil Procedure. The section of the Constitution is permissive only and specifies certain things the trial court *may* do in instructing the jury. We find nothing in section 2101 of the Code of Civil Procedure relating to instructions. Section 2061 of the same code provides that the jury is "to be instructed by the court on all proper occasions" on seven enumerated subjects. The instructions given covered five of those subjects. The evidence did not raise the issues covered by the other two so in this trial there was no *proper occasion* for instructing on them. The section does not require an instruction on the measure of damages.

Defendant also cites such cases as *Nelson* v. *Southern Pacific Co.,* 8 Cal.2d 648 [67 P.2d 682]; *Fries* v. *American Lead Pencil Co.,* 141 Cal. 610 [75 P. 164]; *Rogers* v. *Interstate Transit Co.,* 212 Cal. 36 [297 P. 884]; *Hiatt* v. *Brockman,* 7 Cal.App.2d 88 [45 P.2d 411]; *Sills* v. *Forbes,* 33 Cal.App.2d 219 [91 P.2d 246]; *Peckham* v. *Warner Bros. Pictures,* 42 Cal. App.2d 187 [108 P.2d 699], and *Diel* v. *Baxter,* 58 Cal.App. 2d 383 [136 P.2d 789].

It is unnecessary to review those cases in detail. In some of them we can find nothing bearing on the question before us. In some others appear statements to the effect that the trial judge should instruct on the law applicable to the case. Speaking very generally such statements were made in connection with either erroneous instructions given, erroneous instructions proposed, or instructions refused when covered by others. They do not support the argument made by defendant here.

Section 607a of the Code of Civil Procedure places on counsel the duty of proposing instructions applicable in the case on trial.

■ It is a rule generally recognized in California that a party may not complain of the failure of the trial court to

instruct on a subject in the absence of that party's request to give a proposed instruction thereon. (*McFate* v. *Zuckerman*, 130 Cal.App. 172 [19 P.2d 532]; *Bramble* v. *McEwan*, 40 Cal.App.2d 400 [104 P.2d 1054]; *Peckham* v. *Warner Bros. Pictures, supra.*) In *Ellis* v. *Tone*, 58 Cal. 289, it was held that it was not reversible error to fail to give an instruction on the measure of damages where none had been requested.

 Defendant urges that the judgment is excessive. Plaintiff suffered compression fractures of two vertebrae. She was injured on June 3, 1945, and the case went to trial on October 22, 1946. At the time of trial she was still suffering from the injuries. Two physicians, one a witness for each party, could not predict a complete recovery for her although both testified her condition was improving. She had been confined to a hospital for several weeks and to her bed at home for additional weeks. She suffered severe pain which continued to the time of trial. She had continued headaches, probably caused by a damaged nerve. The movement of her limbs was restricted and she had difficulty bending over. She wore a heavy brace for months followed by lighter types up to the time of trial. She was seriously injured and we cannot as a matter of law hold the verdict and judgment excessive. (*Johnston* v. *Long*, 30 Cal.2d 54 [180 P.2d 21, 181 P.2d 645].)

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied June 27, 1947, and appellant's petition for a hearing by the Supreme Court was denied July 31, 1947.