[Civ. No. 3152.   Fourth Dist.   Nov. 30, 1944.]

FLOYD JOHNSON et al., Respondents, v. COUNTY OF FRESNO, Appellant.

James M. Thuesen, District Attorney, Harold V. Thompson and Robert M. Wash, Deputies District Attorney, for Appellant.

L. M. Linneman and Rae B. Carter for Respondents.

MARKS, J.—This is an appeal from a judgment and from an order denying a motion for judgment notwithstanding the verdict in an action to recover for damages received when the Ford pick-up in which plaintiffs were riding plunged into an open ditch across a public highway of Fresno County. The sole question presented on appeal is the correctness of an instruction to the jury given by the trial court at the request of plaintiffs, and the refusal to give an instruction requested by defendant. These instructions involved the question of knowledge or notice on the part of officers or agents of defendant of the dangerous and defective condition of the highway and the sufficiency of the warning of danger given by defendant.

Fairfax and Temple Avenues are public highways of the county of Fresno. Fairfax Avenue runs north and south and is intersected at right angles by Temple Avenue. A ditch or canal runs east and west a few feet north of the north line of Temple Avenue and crosses Fairfax Avenue. It had been covered by a bridge.

A few days prior to the happening of the accident on the night of Sunday, July 26, 1942, this bridge was removed by the employees of defendant to permit the installation of a new bridge. This left an open excavation across Fairfax Avenue between six and ten feet wide, and between five and six feet deep.

To warn the traveling public of the danger caused by this open ditch a sign about four feet wide was placed in the center of Fairfax Avenue between eight and ten feet south of the

excavation. It had on its face, "Bridge Out. Road Closed." The ordinary type of flares had been placed on Fairfax Avenue both north and south of the excavation by Henry Sorg, defendant's bridge foreman, at about five o'clock p. m. on Saturday, July 25, 1942. These flares had burned out some time before the happening of the accident on the following Sunday night so that there was no warning of the excavation, other than the sign, when the automobile in which plaintiffs were riding was driven into it.

At about midnight plaintiffs were riding north on Fairfax Avenue in a Ford owned and driven by Zeke Gosdin. As it approached Temple Avenue its lights were burning and it was traveling about thirty miles an hour. The night was dark but clear and dry. The Ford traveled over some dirt on the south bank of the excavation and plunged into it injuring Floyd Johnson seriously and Myrtle Johnson slightly.

Section 2 of the Public Liability Act (Stats. 1923, p. 675; Deering's Gen. Laws, 1937, Act 5619), under which this action is brought, provides in part as follows:

"Counties, . . . shall be liable for injuries to persons and property resulting from the dangerous or defective condition of public streets, highways, . . . and property in all cases where the governing or managing board of such county, . . . officer or person having authority to remedy such condition, had knowledge or notice of the defective or dangerous condition of any such street, highway, . . . or property and failed or neglected, for a reasonable time after acquiring such knowledge or receiving such notice, to remedy such condition or failed and neglected for a reasonable time after acquiring such knowledge or receiving such notice to take such action as may be reasonably necessary to protect the public against such dangerous or defective condition."

It cannot be questioned that while unguarded with warning signs the open excavation created a dangerous condition on Fairfax Avenue so no further attention need be given to this phase of the case.

Plaintiffs argue that the removal of the bridge over the canal was done under authority of the board of supervisors; that the inherently dangerous condition, having been planned by and created under authority of the governing body of the county of Fresno, was within the knowledge of its members so that no further notice of the dangerous condition in the highway need have been given defendant to make it liable for resulting damages.

Defendant argues that notice of the dangerous condition arising from construction authorized by the governing body could only arise ''where there is a patent or intrinsic engineering or planning defect in the work ordered, which makes it inevitably a hazard to the public.'' If we understand its position correctly the county argues that the removal of the bridge, with the excavation properly guarded by warning signs and lighted flares, did not create a dangerous condition; that a warning sign and lighted flares were placed in proper positions to warn travelers; that ''knowledge that the flares were out on the part of some person designated in the statute, and failure to remedy said condition within a reasonable time, is a prerequisite to liability'' of the county.

The evidence is undisputed to the effect that the board of supervisors had adopted a budget in which there was an appropriation for repair of this bridge; that the bridge was located in supervisorial district number one; that Maurice S. Meeker was the supervisor representing that district and as such had general supervision of keeping roads and bridges within the district in repair as far as permitted by appropriations made.

Mr. Meeker testified that he had three road foremen to care for the roads and bridges within his district; that C. F. Bedell was the road foreman who had charge of the territory in which the intersection of Fairfax and Temple Avenue is situated.

On the question of the authority given Bedell in his position as road foreman we find the following in Mr. Meeker's testimony:

''Q. I see. Then, do you delegate to your road foreman the authority to determine just what should be done there, is that your practice? A. The foreman in a district is more familiar—— Q. Yes. A. With what is necessary to be done, and he naturally has to do that thing in order to put the culvert or bridge, as it may be. . . . Q. You leave it up to the road foreman to determine what shall be done with the various roads and bridges then, do you? A. Well, within the budget limitations and designations. Q. Yes. That is what I mean. In other words if your budget designated this bridge at Fairfax and Temple Avenues as being the bridge upon which something should be done, where an appropriation is made, you leave it up to the road foreman to determine what is to be done? A. If there isn't a problem that requires a

lot of conference and consideration and discussing, yes.
Q. Well, now, in this particular case, you did just leave it up
to him to go ahead and determine what was to be done? A. I
don't recall that we had any conversation about it. Q. Well,
you don't recall that you departed from your usual practice
there, do you, Mr. Meeker? A. No.''

Mr. Bedell testified that it was his duty to keep bridges in
the district in condition for safe travel over them. He testi-
fied as follows:

''Q. Now, from whom did you receive the direction to re-
move the bridge? A. Nobody gave me directions to remove
the bridge. Q. Did you talk with Mr. Meeker with reference
to the removal of it? A. No, I didn't. Q. You just took it
upon yourself to remove the bridge? A. I did. Q. I see. In
other words, you saw that the bridge needed removing and
you removed it? A. I did. Q. I see. Mr. Bedell, did you
have general instructions from Mr. Meeker with reference
to the removal of bridges where their condition was such as
to warrant removal in your opinion? A. I don't recall whether
I had instructions or not. Naturally my job was to see that
the roads are kept safe and open. Q. And you have the au-
thority of determining those things yourself? A. I believe
I do. Q. Now, at the time you removed this bridge, in your
opinion its condition was such as to warrant its removal, is
that right? A. It was. Q. Now, all of your instructions in
that regard came from Mr. Meeker, is that correct? A. I don't
recall any particular instructions to that effect. It was
naturally the thing to do holding the job that I did there.
I naturally had to keep the bridges open and the road open.
Q. But you had general authority from Mr. Meeker? A. I had
authority to keep the roads open, and to keep them in safe
condition, yes.''

Mr. Bedell further testified that Henry Sorg was bridge
foreman under him; that he ordered Sorg to remove the bridge
in question; that he instructed Sorg to place warning signs
and lighted flares during the progress of the work and keep
the flares burning during the hours of darkness. Sorg tes-
tified that the men under him removed the bridge in question;
that at about 5 o'clock p. m. on Saturday, July 25th, he placed
lighted flares on both sides of the excavation; that he did
not return again to see that the flares continued to burn.

It is undisputed that all of the flares were out at the time

of the accident. The evidence justifies the inference that the oil in all of them had been consumed.

There is no intimation in the record that Mr. Meeker or any other member of the Board of Supervisors of Fresno County had actual notice that the bridge had been removed or that a dangerous excavation had been left open across Fairfax Avenue or that the flares placed on each side of the excavation had burned out. However we believe the evidence sufficient to charge them with notice of what had been done there and the condition created by the removal of the bridge.

It is a rule generally applied in cases of this kind, that where a condition which is inherently dangerous to the traveling public is created under the authority of the governing board of a county or a municipality no further notice of that condition need be established in order to fix liability for consequent injuries to persons using the highway in a careful and prudent manner. (See *Wise* v. *City of Los Angeles*, 9 Cal. App.2d 364 [49 P.2d 1122, 50 P.2d 1079] ; *Sandstoe* v. *Atchison, Topeka & Santa Fe Ry. Co.*, 28 Cal.App.2d 215 [82 P.2d 216] ; *Kaufman* v. *Tomich*, 208 Cal. 19 [280 P. 130] ; *Mulder* v. *City of Los Angeles*, 110 Cal.App. 663 [294 P. 485] ; *Black* v. *Southern Pacific Co.*, 124 Cal.App. 321 [12 P.2d 981].)

Defendant seeks to bring the case without the foregoing rule by urging that the large ditch across Fairfax Avenue did not create an inherently dangerous condition in the road when protected by the warning sign and lighted flares, but that the condition became dangerous when the flares were extinguished. From this it is argued that as no responsible officer or employee of Fresno County had any notice or knowledge that the flares had burned out the action cannot be maintained under the provisions of the Public Liability Act.

The ditch across the highway created an inherently dangerous condition and it was only because of this condition that the placing of the warning sign and the lighted flares became necessary. As the defendant may be charged with both actual and constructive notice of the dangerous condition created by the open excavation the statute places upon it the duty of taking ''such action as may be reasonably necessary to protect the public against such dangerous or defective condition.'' This duty to give such protection, after notice of the condition, is a continuing one and is not fulfilled by placing lighted flares and then blandly permitting them to burn out

so that at night there is no efficient warning of danger to the traveling public. Under such circumstances the defendant cannot escape liability.

The instruction proposed by defendant which the trial court refused to give contained the following: ·

" . . . before the plaintiff may be entitled to your verdict, you must find from a preponderance of the evidence: . . .

"Third: That before the accident in question, such board, officer or person had had a reasonable time, after receiving such notice, to remedy the condition or to take such action as was reasonably necessary to protect the public against it, and had failed to do either.

"The word 'person' as used in this instruction is limited in its meaning to an officer or member of the Board of Supervisors, which must not be construed to include employees generally, the county being not liable for the negligence of a mere employee."

The quoted portion of the instruction is not a correct statement of the law. The Public Liability Act imposes liability when there is notice given to "the governing or managing board of such county . . . or person having authority to remedy such condition. . . ." The evidence already quoted shows rather clearly that Bedell had such general authority. Within that authority he ordered the bridge removed and a new one constructed in its place. He knew when the bridge was removed and the inherently dangerous condition created thereby. This brings this case within the holding in *Boyce* v. *San Diego High School District*, 215 Cal. 293 [10 P.2d 62], where it is said:

"The evidence shows that there had been an accident of the same type about two years previously, and that this accident was known to persons having authority to remedy the condition. John E. Thombs, the custodian of the school buildings and grounds, testified that he heard of the accident and that he reported it to the principal of the school and also notified the superintendent of construction to put a rail around the pit. Thombs testified also that Connell, the superintendent of construction, had full charge of repair work. Bertolucci also said that he heard of the accident, and Claude Woolman, a member of the school board, testified that Bertolucci, as chief electrician, had the power to remedy any defective condition in the electrical system. In this state of the record, the

verdict and judgment below must be upheld. It is apparent that there was actual knowledge on the part of persons having authority to install safety appliances.''

The challenged instruction given by the trial court correctly set forth the law concerning notice to defendant as we have outlined it. The instruction requested by defendant did not correctly set forth the rules of law applicable here and there was no error in refusing to give it.

The judgment and order are affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 25, 1945.