[Civ. No. 7121. Third Dist. May 8, 1945.]

ANNA KIRACK et al., Respondents, v. CITY OF EUREKA, Appellant.

E. S. Mitchell, City Attorney, for Appellant.

Chester Monette and Donald H. Wilkinson for Respondents.

THOMPSON, J.—The city of Eureka has appealed from a judgment of $4,803, which was rendered against it in a suit for damages for personal injuries received by Mrs. Kirack, a pedestrian, as the result of falling over a loose board in a defective sidewalk, which board tilted and caught her foot as her daughter stepped upon the opposite end of it. The liability of the city is based on section 2 of the Statutes of 1923, page 675. (2 Deering's Gen. Laws, 1937, p. 2630, Act 5619.) The cause was tried with a jury, which returned a verdict in favor of the plaintiffs on an implied finding that the city was charged with notice and knowledge of the rotten and defective stringers upon which the loose boards of the sidewalk had been maintained for a considerable length of time. Motions for a nonsuit, for a directed verdict, for judg-

ment notwithstanding the verdict and for a new trial were denied.

The appellant contends that the verdict and judgment are not sustained by the evidence for the chief reason that the decayed stringer and defects in the sidewalk were latent and hidden and that the city had no knowledge thereof. The instructions are not criticized by the appellant, but it asserts that if the jury had followed the instructions it would have been bound to return a verdict in favor of the city.

The plaintiffs are husband and wife. They had resided in Eureka about one year prior to the accident which is involved in this case. A wooden sidewalk was constructed and maintained along the south side of Harris Street. Mrs. Thelma Gillis testified that the walk was there when she arrived more than twenty-five years ago. It was constructed of planks which were nailed at a right angle to wooden stringers placed upon the ground. The planks were laid flush with the top of a concrete curb next to the street. The sidewalk had deteriorated. Some of the planks were loose and "rattled" when pedestrians or bicycles passed over them. One witness said it was rickety. Stewart Hill, who was employed to assist the superintendent of streets, testified that "the wood had rotted from around the nails" in several boards. Mrs. Gillis, who lived in a house on Harris Street near the place where the accident occurred, said that Vincent Getty, who had been superintendent of streets for six and a half years, replaced several deteriorated planks near her home some time during the year preceding the accident. The superintendent, whose duty it was to inspect sidewalks and streets, testified that he had driven along Harris Street "four or five times a month" and saw no dangerous defects in the sidewalk. Regarding his method of inspection, he said:

"When I see a defect I get out and investigate it. . . . When I am going along, I see if anything is wrong with them. . . . Q. The only inspection then, as I understand it, is if you happen accidentally to see a bad sidewalk then you stop your car and inspect it. A. That's right. Q. You know that every board sidewalk has stringers underneath it, do you not? A. I do. Q. And you know that they rot? A. That's right."

The day after the accident occurred, Mr. Getty tore up the sidewalk at that point between N and O Streets for a space of ten or twelve feet. He removed about twenty planks.

Several of the planks were loosened from the stringers. John Witherow, a city inspector or investigator, testified that the stringer which caused the accident was "rotted; it was very rotten, you could crumble it with your hand." He said the rotted portion was crushed down several inches by the end of the loose plank. The decayed stringer gave no support whatever to the dislodged plank. It is evident that the stringer and the sidewalk had been in that deteriorated and dangerous condition for some time. Mrs. Jessie Davis, who for several years lived near the place where the accident occurred, testified that portion of the sidewalk "was rattly and the boards were none too safe"; that when she used that sidewalk she would get off that portion and walk on the curb because "you could see . . . part of the boards were loose and didn't look any too safe; . . . I wouldn't risk walking on it." She said she hadn't noticed any improvement in that sidewalk "in the last nine years." Immediately after the accident she observed the one plank which caused the accident depressed at one end and "the other was sticking up in the air."

The plaintiff, Anna Kirack, who lived on Grant Street, and had never before traveled on the sidewalk along Harrison Street, and who had no knowledge of its dangerous condition, was walking along that street between N and O Streets with her daughter on Sunday afternoon. The daughter stepped on one end of a loose plank which, on account of the decayed stringer beneath it, went down, causing the opposite end to fly up and catch the foot of Mrs. Kirack. She fell over the board and broke her arm and otherwise injured herself.

It is not contended the judgment is excessive. This suit for damages was commenced. The jury returned a verdict in favor of plaintiffs. From the judgment which was accordingly rendered this appeal was perfected.

■ The judgment is adequately supported by the evidence. The statute previously referred to renders municipalities liable for injuries sustained by persons as the result of dangerous or defective conditions of public streets and ways, which includes sidewalks, when the officers "having authority to remedy such condition, have knowledge or notice" thereof and fail or neglect to do so "for a reasonable time after acquiring such knowledge or receiving such notice."

It is not contended that anyone personally notified the authorities of the dangerous and defective condition of the sidewalk, but clearly the officers of the city of Eureka had constructive notice and knowledge of that dangerous condition. There is substantial evidence to support the implied finding of the jury that the superintendent of streets, who had occupied that position for six and a half years, failed to exercise due care to inspect that sidewalk to see that it was kept in reasonably safe condition for the use of pedestrians. He admitted that he merely drove by on the street, making a casual inspection, and that he repaired only such defects as were obvious to him in passing by. He knew that boardwalk had existed for a long period of time; that the planks were laid on wooden stringers which rested on the bare ground and were subject to deterioration. He actually repaired a portion of that same sidewalk within a short distance of the point where the accident occurred the year previous to the accident and should be charged with knowledge of the dangerous condition which had existed for several years. Under the circumstances of this case the rotten stringer may not be said to be a mere latent defect. Many of the planks were loose and rattled when a pedestrian or bicycle crossed them. The wood had rotted about the nails which originally fastened them to the stringers. That condition was notice to a reasonably prudent person that the stringers which rested on the earth were also likely to be rotted and dangerous.

A duty is imposed upon officers of a municipality, whose business requires them to inspect and repair sidewalks, to exercise due care to discover either patent or latent defects which may be reasonably anticipated. (*Billings* v. *City of Snohomish,* 51 Wash. 135 [98 P. 107]; *Colquhon* v. *City of Hoquiam,* 120 Wash. 391 [207 P. 664]; 7 McQuillin's Mun. Corp. (2d ed.) § 3664, p. 246.) In notes of the Cumulative Supplement of 1943, to the last cited authority, it is said ''Defects due to natural wear of a bridge must be anticipated by the municipality. *Mowrey* v. *Mounds,* 245 Ill.App. 338'' that ''Defects are not 'latent' if they are discoverable by exercise of reasonable diligence. *O'Gorman* v. *Kansas City* (Mo. App.) [233 Mo.App. 124], 93 S.W.2d 1132,'' and that ''Notice of rotten condition of wooden culvert imposes duty upon municipality to inspect, where such inspection would have disclosed the condition. (*Tharpe* v. *Sibley Lake Bisteneau & S. Ry. Co.* (La.App.), 144 So. 274.)''

In the Billings case, *supra,* based upon facts remarkably similar to those of the present case, the foregoing principle supporting the doctrine of liability of a municipality for injuries sustained by a pedestrian who tripped and fell over a board in a dangerously defective sidewalk, is clearly asserted. That case was reversed solely because of a lack of evidence to support the measure of damages. It was held that the judgment was excessive. Regarding the principle previously stated, the court said:

"The injured respondent tripped over a board in the walk, which was raised immediately in front of her by being stepped upon at the other end by the person with whom she was walking. It is contended that there was no evidence tending to show that the walk at the place of the accident was not reasonably safe for public travel, nor was there any evidence tending to show that the city had notice, either actual or constructive, of the actual condition of the walk. That the walk was so far defective as to render it unsafe for public travel at the place of the accident, it seems to us, the evidence leaves no doubt. The walk was originally constructed by laying three stringers parallel with the course of the street and nailing boards crosswise thereon. At the time of the accident, the stringer next the property line had entirely rotted away, and the one next the street had so far decayed as to allow one of the boards forming the walk to sink, when stepped upon, below its original level. The effect was that the boards, when stepped upon at one end, would raise at the other, thus tending to trip any one who might be passing at that time. Manifestly, such a condition renders a walk unsafe.

". . . The evidence . . . tended further to show: That the walk had been down something over five years; . . . that the stringer next the street had decayed on the inner side, leaving a thin shell to support the boards, and this shell had been crushed down beneath the board over which the respondent received her injury; that the nails that originally held the board to the stringers had pulled out in part, leaving the walk in a loose condition, so that it rattled when walked upon; and that it had been in this condition for some months before the accident. This, if believed by the jury, warranted a finding that the city had constructive notice of the defect. The city officers must exercise reasonable diligence in the care of the city's walks. They must take notice that constant use

will gradually wear out a walk, that nails will pull and supports decay, and that at best the life of a wooden sidewalk is limited to but a few years. It is not enough that they may find that the surface of the walk appears sound. The walk as an entirety must be examined and kept in repair, if the city is to escape the charge of negligence.''

■ The rule is well established that constructive as well as actual knowledge of a dangerously defective sidewalk or street may render a municipality liable for damages for injuries sustained on that account when such defects should be reasonably anticipated by the officers in charge, or when reasonable inspection would have disclosed the dangerous condition. ■ When reasonable minds may differ regarding the question as to whether defective conditions which have existed for sufficient time, under the particular circumstances of a case, will charge a municipality with constructive knowledge thereof, the conclusions of the jury in that regard may not be interfered with on appeal. (*George* v. *City of Los Angeles*, 51 Cal.App.2d 311, 315 [124 P.2d 872]; *Smith* v. *County of San Mateo*, 62 Cal.App.2d 122, 128 [144 P.2d 33]; *Silva* v. *County of Fresno*, 63 Cal.App.2d 253, 260 [146 P.2d 520]; *Balkwill* v. *City of Stockton*, 50 Cal.App.2d 661, 667 [123 P.2d 596]; *Johnson* v. *County of Fresno*, 67 Cal. App.2d 116 [153 P.2d 557]; *Fackrell* v. *City of San Diego*, 26 Cal.2d 196, 206 [157 P.2d 625, 158 A.L.R. 625]; 43 C.J. § 1804bb, p. 1026; 7 McQuillin's Mun. Corp. (2d ed.) § 3004, p. 246.)

■ The appellant is in error in asserting that the instructions necessarily required the jury to return a verdict in its favor. The jury was very fully and fairly instructed on every essential issue of the case. It was told that the complaint alleged the plaintiff, Anna Kirack, was injured as the proximate result of the maintenance of an obviously dangerous and defective sidewalk, of which defect the city had notice and knowledge and which it failed to remedy after reasonable notice and knowledge thereof. It was clearly and repeatedly instructed that the city was not an insurer of pedestrians, and that the jury could not render a verdict for plaintiffs unless it appeared that the sidewalk was defective and dangerous as alleged, and that the city had either actual or constructive notice thereof and failed for a reasonable time thereafter to repair or remedy the defects. The jury was told that the burden was on plaintiffs to prove every material allegation of the

complaint. Those issues were all determined by the jury adversely to the appellant. The jury was fairly and correctly instructed. The evidence is not in conflict with either the instructions or the verdict.

■ There was no misconduct on the part of plaintiffs' attorney in the cross-examination of defendant's witness John Witherow. There is no evidence even intimating that the city of Eureka was insured against liability for damages for injuries to individuals. It does not appear that the witness was an insurance agent. He was called as a witness for the defendant. In response to a question propounded by defendant's attorney, he said that he was an "investigator." On cross-examination, without objection, he explained that he was also an "adjuster." Defendant's attorney volunteered the statement that "For the purpose of identification, he is an employee of the City of Eureka." Plaintiffs' attorney then said "I am entitled to bring out the whole facts, what his business is," to which an objection was for the first time made. That objection was sustained. There was no misconduct, nor prejudice to defendant on that account.

The judgment is affirmed.

Adams, P. J., and Peek, J., concurred.

A petition for a rehearing was denied June 4, 1945, and appellant's petition for a hearing by the Supreme Court was denied July 5, 1945. Edmonds, J., voted for a hearing.