## HENRY W. SEALE *v.* THOMAS FORD AND GEORGE GORDON *et als.*

CONFIRMED SURVEY OF MEXICAN GRANT.—The confirmed survey of a confirmed Mexican grant of land has the same effect and validity as if a patent for the land surveyed had been issued by the United States.

TITLE ACQUIRED BY CONFIRMED SURVEY OF MEXICAN GRANT.—The confirmed survey of a confirmed Mexican grant of land gives to the confirmee a title which cannot be defeated by an older Mexican grant of a specific quantity within larger boundaries, embracing both, the survey of which has not been finally confirmed.

CONFLICT BETWEEN TWO MEXICAN GRANTS.—If the plaintiff has title under a confirmed survey of a confirmed Mexican grant, and the defendant under an unconfirmed survey of a confirmed grant, which he claims to be a perfect grant, the burden of showing a perfect grant rests on the defendant.

IMPORT OF WORDS "GRANT" AND "SEIZED IN FEE."—The words "grant" and "seized in fee," as used in the stipulation of counsel, admitting certain facts for the purposes of the trial, filed in this case, do not, *ex vi termini*, import a perfect

grant with specific boundaries in favor of defendant's grantor, or that the grantee in said grant received juridical possession from the Mexican Government.

TRANSFER OF CASE BY AMENDED CONSTITUTION.—When a trial was commenced and the testimony taken by a Judge before his term expired under the old Constitution, and he was re-elected; *Held,* that as a Judge under the new Constitution, he could decide the case on the evidence then taken, without a re-submission.

APPEAL from the District Court, Third Judicial District, Santa Clara County.

The cause was tried in September, 1863, by the Court, without a jury. The decision was made and judgment filed January 13th, 1864.

The other facts are stated in the opinion of the Court.

*A. & H. C. Campbell,* for Appellants.

It is admitted that the Rancho San Francisquito has been finally confirmed to Rodriguez, who claimed the same under a grant thereof made by the Mexican Government of California to her husband, Buelna; that defendant Gordon is seized in fee as owner of said rancho, under that title; that said grant bears date May 1st, 1839; that the grant under which plaintiff claims bears date February 16th, 1841. There is no reservation or restriction in the terms used. Confirmee claims by *grant,* and Gordon *owns in fee* under that title.

When it is admitted that the Mexican Government granted this San Francisquito Ranch to Gordon's grantor, and that that grant is senior to plaintiff's, it only remains to show that the land is within that grant. Defendants show a perfect grant; nothing less can grant the land. Something inchoate may give an equity; nothing less can give the admitted title in fee.

*S. O. Houghton,* for Respondent.

It is contended that the admission that Gordon is the owner in fee of the Rancho San Francisquito Palo Alto, admits that he has a perfect title thereto. Assuming for the purposes of the argument that such is its effect, the position of the defendant is no better than though no such admission had been made, for it does not relieve the defendants from the necessity

14

of showing that the lands in question are a part of that rancho. Upon that point they have made no proof—they have neither produced their grant for that purpose, nor have they shown a final survey by authority of the United States. On the contrary, it appears from the record that it is an unlocated claim, now pending and undetermined before the Federal Courts.

By the Court, SAWYER, J.

This is an action to recover certain lands in Santa Clara County, and the contest arises out of an apparent conflict of boundaries between two adjoining ranchos granted by the Mexican Government—one, called Rancho Rinconada y Arroyo de San Francisquito, to Maria Antonio Mesa, in 1841; and the other, called Rancho San Francisquito Palo Alto, to Antonio Buelna in 1839. Both grants have been confirmed. The plaintiff is admitted to be the owner of an undivided half of the former, and the defendant Gordon, the owner of the latter by titles·derived from the respective confirmees. The survey of the former has been made, and finally confirmed, by the Supreme Court of the United States. The survey of the latter has been made, and upon the proper order returned into the District Court of the United States for the Northern District of California, for examination, where it is now pending and undetermined. The land in dispute is embraced in both of said surveys. The plaintiff having recovered, a motion for new trial was made and denied, and defendants appeal from the order denying a new trial, and from the judgment.

The principal ground of appeal ·is, that the evidence is insufficient to support the findings.

*Confirmation of a final survey of a Mexican grant.*

The plaintiff's survey having been finally confirmed, it has, under the Act of Congress of 1860, " the same effect and validity as if a patent for the land surveyed had been issued by the United States," and the respondent stands in the same position as he would if he had his patent. He has, therefore,

made out a title which can only be defeated by an older grant from the Mexican Government which actually covers the same lands.  And the older title must be a " perfect title," that did not require presentation to, and confirmation by, the Board of Land Commissioners; or, at least, it must be under a grant by specific boundaries, which could not be modified by the Government of the United States; and not a grant of a specific quantity within larger boundaries.  (*Waterman* v. *Smith*, 13 Cal. 407–22, and cases there cited.)

### Inchoate and perfect titles under a Mexican grant.

The burden of showing superior title from a paramount source of proprietorship was on the defendants.  It was stipulated that the Rancho San Francisquito has been finally confirmed "to Maria Conception Valencia de Rodriguez, who claimed the same under a grant thereof made by said Mexican Government;" and that George Gordon was, at the time of the commencement of this suit, " seized in fee of said rancho, by title derived from said confirmee," but it is not stipulated that said grant was formally located by the Mexican Government, or, if so, where.

It is insisted by appellant that the stipulation, that the confirmee " claimed by grant," and that Gordon was " seized in fee " by title derived from the confirmee, necessarily imports, *ex vi termini*, that defendant Gordon holds, under what has been denominated in our legal proceedings a " perfect title "— that in contemplation of law there could be no " grant," and Gordon could not be " seized in fee " unless there was a perfect title; and that under the decision in *Minturn* v. *Brower*, 24 Cal. 644, the confirmation of the survey under the plaintiff's grant cannot affect defendant's perfect title under his prior grant.  But the term grant, as almost universally used in California, both in legal proceedings and common parlance, does not, necessarily, have this signification.  It is a matter of public notoriety, and a part of the general history of the country, of which the Courts can take notice, that there are, in the whole State of California, but very few of that class of Mexi-

can titles, which have sometimes been called "perfect titles." The term grant has not only been universally used by the people to designate all concessions of the Mexican Government, whether inchoate and requiring the action of the United States Government to perfect the titles under them, or perfect vesting a complete title, which cannot be disturbed; but such use of the term has also been so general in legal proceedings as to have acquired this comprehensive signification in the legal language of the State. The word is often used in this comprehensive sense in *Waterman* v. *Smith*, before cited, and other cases of a similar character. Nor does the admission that Gordon was "seized in fee," in the connection in which it stands, necessarily, or by fair construction, import that there was a perfect title. The admission is that he was "seized in fee as owner of said rancho"—not of the lands in dispute—without attempting to locate the rancho. That was left for other proofs. The fair construction, when taken in connection with the context, is, that Gordon had acquired the title granted to Buelna, and subsequently confirmed to his widow, and the location of the grant was the question reserved to be contested in the action. It is manifest that the respondent did not use the terms of the stipulation in the sense claimed for them by the appellant, for that would be to stipulate away the very point, and the only point, in controversy; nor would the Court be justified in giving them that construction. In our opinion, proof other than that contained in the language of the stipulation is necessary to show that the defendants hold a "perfect title." Appellants also claim that the fact of juridical possession of the grantee of the Mexican Government, under whom they claim, is admitted, and that no proof is required on that point. There is no express admission in the record that juridical possession was given to Buelna. Appellants must suppose that the admission of this fact is implied in the word "grant," and the admission that Gordon was seized, upon their theory that these terms necessarily, in law, mean nothing less than a "perfect title," for the reason that "juridical possession" is an essential element in a "per-

fect title." But as their construction of the stipulated facts in this respect cannot be maintained, it follows that this implication fails; and there is nothing else in the record from which the admission can be inferred. This brings us to the question as to whether the evidence is clearly sufficient to require a finding that there was a "perfect title." No grant of any kind, and no document constituting any part of a perfect title under the Mexican Government, is in the record. We have, therefore, no means of knowing whether the title was inchoate or perfect. Nor is there anything in the record by which we can determine whether or not the grant was of lands with determinate, specific boundaries, or a grant of a certain quantity within larger boundaries, which might be located by the Government at different points. We cannot say, therefore, that the findings are not fully supported by the evidence. There is nothing in the record to connect any of the defendants except Gordon with the Buelna grant.

*Effect of amendment to the Constitution on causes pending in District Court.*

The only remaining point requiring notice, is, that the trial having been commenced in the old Court, and the decision not having been rendered until after the new Court, under the amended Constitution, superseded the old, the Hon. S. B. McKee, before whom the trial was commenced, and who was elected Judge of the new Court, had no authority, without a re-submission of the case, to decide it upon the evidence taken by him as judge of the old Court. All cases pending on the first day of January were by law transferred to the new Courts, and it is provided " that they shall be heard, tried and determined therein in the same manner as if originally brought on in such District Courts." We think the new Court properly took up the case at that stage of the proceeding, which had been reached at the time of the transfer. The testimony was taken in the regular course of the proceedings, and the Judge who was re-elected was just as much judicially informed of the testimony as he was of any of the other proceedings in the

case which took place prior to the transfer, and he went on in the new Court from the point attained at the time of the transfer, and " determined " the case " therein in the same manner as if originally brought on in such District Court." But however this may be, no objection to his proceedings was taken in the Court below, before the decision, or on motion for new trial, and the parties must be deemed to have acquiesced in his proceeding with the case on the testimony already submitted. It is not a case of total want of jurisdiction. The objection is purely technical, and cannot be raised in this Court for the first time.

It results from the views expressed that the judgment must be affirmed, and it is so ordered.

By the Court, SAWYER, J., on rehearing.

Upon a further examination of this case, aided by the argument of counsel upon the rehearing, we find nothing to shake our confidence in the correctness of the conclusions before attained. Appellant claims that the stipulation' that Gordon " was seized in fee " of the Rancho San Francisquito necessarily imports that he had a perfect title, and for this reason the Court gave a wrong construction to the stipulation. But the same stipulation says that respondent was " seized in fee " of an undivided half of Rancho Rinconada, and that the survey of this grant has been finally confirmed by the Supreme Court of the United States, while the survey of the appellant's grant is still in dispute and pending before the District Court of the United States. Upon the construction claimed by appellants, if both grants actually cover the same land, it is stipulated that both parties are seized in fee of the same land under adverse grants, which is impossible. Manifestly the intention of the parties was to stipulate that each party had acquired all the interest of the original grantees of the Mexican Government in the respective ranchos without any agreement as to whether the grants were perfect or inchoate. No other reasonable construction can be given to the stipulation, and

the subsequent action of the parties on the trial harmonizes with this view. The District Court did not find a perfect grant, and, in our judgment, the evidence in the record does not justify us in holding that there was one. As the appellant does not appear to hold under a perfect grant, the confirmed survey of the respondent must prevail.

But again, we find no evidence in the record showing that the lands in controversy are within the grant under which the appellants claim, whether perfect or inchoate. The grant itself is not in the record, nor are the boundaries called for by the grant shown. There is testimony tending to show what land Buelna went into possession of, and what land was measured off to him by the Mexican officer; but whether it was in fact within the calls of the grant or not is not shown. The evidence on the subject consists of depositions taken before the Board of Land Commissioners, and has no reference whatever to the plats filed in the case, which were made by the Surveyor-General long after the depositions were taken; and there is no connection whatever shown between the plats and the depositions. They are wholly independent pieces of evidence. The plat of itself proves nothing, because it is the plat of a survey still unconfirmed, and the land may yet be located somewhere else. And as there is nothing to connect the plats with the depositions read in evidence, the depositions and plats do not illustrate each other. We find nothing in the record showing that the land spoken of in the several depositions includes the land in dispute, or even the land embraced in the plats on file. The testimony on this point is insufficient to justify us in disturbing the finding.

Judgment and order affirmed.