[Civ. No. 3701. Third Appellate District.—April 5, 1929.]

MARY DAWSON, a Minor, etc., Appellant, v. TULARE UNION HIGH SCHOOL et al., Respondents.

Joseph A. Brown and F. A. Anderson for Appellant.

LeRoy McCormick, District Attorney, Leslie A. Cleary, Deputy District Attorney, Glenn Moran and H. B. McClure for Respondents.

FINCH, P. J.—The plaintiff brought this action to recover damages caused by an upright piano falling upon and crushing one of her ankles while she was engaged in school

work· as a student in the Tulare Union High School. The trial court granted defendants' motion for a nonsuit, made on the ground set forth in "section 581 of the Code of Civil Procedure, subsection 5, which reads to the effect that 'An action may be dismissed, or a judgment of nonsuit entered, in the following cases: . . . 5. By the court upon motion of the defendant, when upon the trial the plaintiff fails to prove a sufficient case for the jury.' " No other ground was specified in the motion. The plaintiff has appealed from the judgment. "It is . . . settled law that a motion for a nonsuit must point the attention of the court and counsel to the precise grounds upon which it is made. . . . It is not sufficient to state generally that there is no evidence before the court justifying it in granting any relief to the plaintiff, or that plaintiff has failed to prove a sufficient case. The motion should show wherein the plaintiff failed to prove its case or why he is not entitled to recover." (9 Cal. Jur. 548; *Masero* v. *Bessolo*, 87 Cal. App. 262 [262 Pac. 61]; *Henley* v. *Bursell*, 61 Cal. App. 511 [215 Pac. 114].)

There is no dispute as to the injuries received by the plaintiff or the serious nature thereof. Under the settled rules governing the determination of a motion for nonsuit, only. the evidence most favorable to the plaintiff need be considered. There is evidence in the record from which the facts herein stated may be inferred. The piano in question was the property of the defendant district. It was frequently moved from one room to another. To facilitate the moving thereof, it was kept upon what the witnesses referred to as a dolly. This dolly consisted of a skeleton structure, rectangular in form, of the same size as the bottom of the piano, and made of two by four inch lumber. Near either end, between the side pieces of the framework, was a wooden roller about four inches in diameter and twelve in length, through which there was a metal rod forming the axis of the roller and supporting the frame. The piano was not fastened to the dolly but merely rested upon it, with no stays to keep it in place. The bottom of the piano, when on the dolly, was five or six inches above the floor. It was "awfully wobbly." "It seemed to be on a very unsteady platform. Oh, just like the wheels in it were loose." "It was shaky." "When the girls would play the piano, it

would rock backwards and forwards." "It seemed to go backwards more than forwards." "When you press on the pedals, . . . that caused the piano to tip." "It was plain and marked, the shaking of the piano." "Different times in our gym class we noticed the piano shook; . . . about every time we used the piano." "We used it once a week." "I think it was the vibration from the different jumping games" that caused the piano to fall. The piano had been kept upon the dolly for more than a year before the injury to the plaintiff. About a year before the accident it fell backwards upon the leg of a student who was endeavoring to move it. The physical director, employed by the school and who had charge of the gymnasium at the time of the accident last referred to, was present when it occurred. The student who was injured in that accident was unable, by reason thereof, to attend school for about two weeks. On his return he made a report as· to the reasons for the accident. The principal of the school, who was also district superintendent, testified that he had no knowledge of that accident. He knew, however, that the piano was kept upon the dolly, but made no examination as to its stability. He did not know whether it shook or rocked. The dolly was not used after the injury to the plaintiff. The "director of girls' physical education" had charge of the piano and the room in which it was used during their class period. This teacher and the physical director had the same opportunity as the students to observe the instability of the piano on the dolly.

At the time of the accident the plaintiff and several other girls were playing a game as a part of their instruction in physical education. While they were "all jumping up and down on the floor" the piano "fell without warning," going over backwards and crushing the plaintiff's "ankle to the floor."

It may be inferred from the facts stated that the vibration resulting from the "jumping game" caused the piano to slip backwards until its unstable equilibrium on the dolly was destroyed and that, therefore, the keeping of the piano on the dolly in the manner shown was the proximate cause of the accident. The evidence is clearly sufficient to warrant the inference that it was negligence to maintain such defective condition, and it is wholly immaterial, on this appeal

from the judgment of nonsuit, that there may be sufficient evidence to justify a contrary inference.

"Counties, municipalities and school districts shall be liable for injuries to persons and property resulting from the dangerous or defective condition of public streets, highways, buildings, grounds, works and property in all cases where the governing or managing board of such county, municipality, school district, or other board, officer or person having authority to remedy such condition, had knowledge or notice of the defective or dangerous condition of any such street, highway, building, grounds, works or property and failed or neglected, for a reasonable time after acquiring such knowledge or receiving such notice, to remedy such condition or failed and neglected for a reasonable time after acquiring such knowledge or receiving such notice to take such action as may be reasonably necessary to protect the public against such dangerous or defective condition.'' (Stats. 1923, p. 675.)

In a similar case it was held by this court that a school district is liable for injuries to a pupil, caused by the maintenance of a dangerous condition of which the district superintendent has notice and which he neglects to remedy within a reasonable time. (*Huff* v. *Compton City Grammar School Dist.*, 92 Cal. App. 44 [267 Pac. 918].) ■ The statute does not provide that actual notice is a prerequisite to recovery in such a case. The long-continued existence of a defective condition may establish constructive notice thereof. (*Wurzburger* v. *Nellis*, 165 Cal. 48, 53 [130 Pac. 1052] ; 43 C. J. 1043–1057.) It may be inferred from the circumstances in evidence that the principal had constructive notice of the defective condition and he certainly had "authority to remedy such condition.'' To hold that actual notice is required in such a case would be to place a premium on indifference and neglect of duty. "Neglect of duty cannot be made the basis of exemption from liability.'' (*Kramer* v. *City of Los Angeles*, 147 Cal. 668, 681 [82 Pac. 334, 339].)

■ Under the provisions of section 1623 of the Political Code a judgment in a case such as this is a charge against the school district, but the members of the board of trustees are not "personally liable for accidents to children . . . in connection with school work.'' The judgment of nonsuit in favor of the trustees personally, therefore, should stand,

notwithstanding the insufficiency of the motion therefor, because it appears that the plaintiff will be unable to prove a cause of action against them.

The judgment in favor of the defendant Tulare Union High School District against the plaintiff is reversed. The judgment in favor of the other defendants is affirmed.

Thompson (R. L.), J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 4, 1929, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 3, 1929.

All the Justices concurred.