[Civ. No. 4483. Third Appellate District.—January 15, 1932.]

THEATRICAL ENTERPRISES, INC. (a Corporation), Appellant, v. PAUL L. FERRON et al., Respondents.

[Civ. No. 4484. Third Appellate District.—January 15, 1932.]

PAUL L. FERRON et al., Respondents, v. THEATRICAL ENTERPRISES, INC. (a Corporation), Appellant.

Arthur C. Fisher and Edmund S. Green for Appellant.

George L. Greer for Respondents.

PARKER, J., *pro tem.*—In the first of the cases entitled above, plaintiff sought a rescission of an agreement of purchase and sale, with damages, on the ground of fraud. In the second action the plaintiffs, who were the vendors, sought to foreclose a chattel mortgage given to secure the payment of a portion of the purchase price under the same transaction set up in the first case. While there was no consolidation in the court below, yet the main issue in both cases was the same, and it was stipulated that the testimony and evidence adduced in one case be considered in the other, without repetition. By stipulation the appeals in both cases are presented here on the same record. The appellant in both cases is the same, and therefore, the reference to the parties will be merely as appellant and respondent.

Appellant purchased from respondents a theatre located in Los Angeles County. For the purposes hereof it may be stated to be beyond dispute that the entire transaction was based specifically on respondent's statement to appellant, in writing, that the average gross income for the twelve months preceding was not less than $1100 per week, exclusive of "Lenten Season". Both parties concede the making of this representation, appellant alleging appropriately, the deceit thereof, and respondent alleging the truth thereof. Obviously, the question of the theatre's receipts over the time in question was the sole issue.

The rescission case was first called for trial. Respondent Paul Ferron was called as a witness for appellant under section 2055 of the Code of Civil Procedure. This witness produced a book or diary purporting to show the receipts of the theatre during the time in question, and his examination proceeded as to the contents and accuracy of the account. After the examination had proceeded a short time, the following transpired: "Mr. Fisher (for appellant): I think we will save some time, Mr. Greer, I do not want to go through this page by page. We can stipulate that the items at the bottom of the left-hand column at the top of each page are gross receipts. Mr. Greer (for respondent): I don't want to do that because there are some pages in there that might be on the other side. Mr. Fisher: We can stipulate that the largest gross amount at the bottom of

either column is the amount of the receipts. Mr. Greer: That this is a fair computation of the business that was done in the theatre upon the day it appears to have been made. Mr. Fisher: Perhaps I had better go through them here." The examination then proceeds, going over item by item of the book. Then another interruption and colloquy between counsel as follows: "Mr. Fisher: Now, to save time going through the rest of those records—those have all been the bottom figure in the upper lefthand corner. Mr. Greer: All right. Mr. Fisher: Will you stipulate whichever is the highest figure on the page shall be the amount of the gross receipts? Mr. Greer: Correct. Of course, if there is some error on the page, we will correct it. Mr. Fisher: Yes, I will be glad to do that." At this junction the trial judge very aptly intervenes as follows: "The court: How do you expect the court to ascertain those facts from that stipulation? Mr. Greer: I don't know. Mr. Fisher: That is what I have the book here for, to compute the amount before the book is introduced." Thereafter the examination of the witness continued on the subject of the contents of the book. As the examination progressed the court expressed the thought that it would be necessary to refer the matter to an accountant, inasmuch as the issue involved a long period of business transactions, but no definite order was made although all parties expressed a willingness to adopt such a course, after going through more figures and after a summary thereof had been prepared. Then followed another discussion between counsel as follows: "Mr. Fisher: We find that the gross receipts for the period of one year averaged $1,096.15 a week, according to defendant's own record. I don't know whether counsel is willing to stipulate that or not. . . . Perhaps we can get it in stipulation form. The average receipts, according to the book which Mr. Ferron has, were $1,096.15 per week, exclusive of the 'Lenten' season. Mr. Greer: That is correct. That is, the box office receipts as shown in this book. There are other receipts which would raise it over that, which we are able to prove in a few minutes, running it over $1,100.00 instead of under. Mr. Fisher: The stipulation only went to this book. Mr. Greer: That is, the book shows the box office receipts to have been for the year preceding, excluding the 'Lenten' season, $1,095.00 per week gross, the box office

receipts. Mr. Fisher: I think we had better have the stipulation this way then. That the records . . . '' The court interrupted and expressed the thought that a showing of $1,096 gross receipts average would fulfill the representations made, whereupon counsel for plaintiff stated: ''We will show subsequently that this defendant kept other records.'' Then followed inquiry as to other records or accounts.

Upon further examination, after respondent's counsel had interrogated him, appellant's counsel commenced further questioning. The following transpired: ''Mr. Fisher: And also for the last twelve weeks before you sold the theatre, the average gross receipts were less than $900.00 a week, isn't that true? The court: I do not think you can cross-examine the witness in view of your stipulation. You have already stipulated as to these figures. Mr. Fisher: I am not cross-examining. We are accepting these figures as correct. The Court: If you will make an objection, I will rule.'' Whereupon, objection was made by respondent and sustained. Thereafter, other witnesses were called and examined as to the collections at the theatre, the receipts and methods of bookkeeping. Then respondent, Paul L. Ferron, was recalled by appellant for further inquiry on the account. Thereupon, appellant offered in evidence the book, requesting the reception as an exhibit. The offer was accepted, the book admitted as plaintiff's exhibit.

At this point the record discloses the following: ''The Court: Anything further? Mr. Fisher: At this time, your Honor, we would like to make a request that the court make an examination of this book that has been introduced in evidence. If the court sees it in the same light that counsel does and that other parties who have examined the book have done, the court will observe that the sheets prior to the period covered by this period of one year prior to the purchase by Theatrical Enterprises appear to be worn and considerably more dirty than the ones covering this period; that the sheets covering this entire year period appear to have been made all at one time and the prior ones appear to have a stain of age upon them. With that, if the court feels that the plaintiff might introduce evidence after the examination to show that the attendance at this theatre was not in accordance with the records disclosed in that

book, we would like to recall Mr. Webb and Mrs. Webb and other witnesses we have here to testify. Mr. Greer: I suggest that we get somewhere along with the case. The Court: Yes. Mr. Fisher: The plaintiff will rest unless the court sees fit to hear that line of questioning. The Court: The court will not permit it. Mr. Fisher: Would the Court— The Court: You have already stipulated as to the result of this book, and you are bound by that stipulation. Mr. Fisher: The stipulation was that the book— The Court: The Court understands what the stipulation was. Mr. Greer: Do I understand that you rest with that? We do, unless we are permitted to question witnesses in regard to the attendance of that theatre. The Court: I will not permit it. Mr. Fisher: Well, the plaintiff will rest, inasmuch as the court will not permit any examination as to the attendance at the theatre.'' It was then stipulated that the testimony in reference to the rescission action be deemed as testimony that would be introduced under the defense in the foreclosure suit.

We have found it necessary to detail the record as above inasmuch as the error complained of could in no other manner be discussed. The main purpose, however, in the somewhat tedious detail was an effort to discover something that might be construed as a stipulation of fact.

It must be borne in mind that the witness under examination was an adverse party called under the provisions of section 2055 of the Code of Civil Procedure. He was being examined as to matters of account kept by himself and under his exclusive control. There were frequent attempts at stipulation, indicating most clearly an absence of intent on the part of appellant that its case should be concluded by the entries in the book. So uncertain seemed the purpose of the suggested stipulation that the court inquired as to its efficacy and got the response that no one knew.

It is clear that counsel in the court below stipulated to nothing. When appellant's counsel was stating the terms of a proposed stipulation, he was interrupted by the court and proceeded no further. However, giving every inference and construction possible to determine that some sort of a stipulation was entered into, the utmost that the record will permit limits us to the entries in the book of account. The positive statement of appellant's counsel appears that

the stipulation went only to the book, had it been accepted. In other words, by supplying omissions, and by some occult process of mind-reading, it might be guessed that appellant, at the trial, was ready to concede that the figures in the book were intended to show the actual receipts of respondents' business. But to hold that appellant thereby bound himself or foreclosed his case is quite a different matter. If appellant had gone further and had expressly and unequivocally agreed that the book in question was kept by respondents, and that the figures therein represented the amounts actually received by them, we know of no rule of law or evidence that would have precluded him from showing that the entries were false or incorrect. In its first analysis a stipulated fact is of no greater value than a fact found after controversy, and in the absence of stipulation, the finding could easily follow that the book was kept by respondent, and that the amounts did, according to the book, represent receipts. This could not conclude the present inquiry, nor could it foreclose appellant's right to impeach the integrity of the book. The receipts claimed necessarily arose out of attendance, and it would follow that if there had been no attendance there would have been no receipts. Proof of slight attendance or no attendance at all over periods wherein the book showed large receipts from that source, would be material and relevant and of high probative value.

It may be conceded that stipulations of fact, where no real controversy of fact appears, should be encouraged, and when entered into, should be strictly enforced. But there should be no sacrifice of substantial rights merely to subserve the constant importuning to speed up trials. The purpose of every trial is to examine into disputed facts. A court represents the citizen's last stand—a place wherein his grievances may be heard and determined, and irrespective of the correctness of the determination, there should be no restriction on the completeness of the hearing, save only in so far as recognized and salutary rules prescribe.

Stipulations are ordinarily entered into for the purpose of avoiding delay, trouble or expense. As a general rule they should receive a fair and liberal construction, in harmony with the apparent intention of the parties and the spirit of justice, and in furtherance of fair trials upon

the merits, rather than a narrow and technical one, calculated to defeat the purposes of their execution. (25 R. C. L. 1095.)

In the brief of respondent in the instant case we find the language: "No lawyer would have the hardihood to deny that the exclusion of material evidence that might well have brought about a judgment different from the one entered is prejudicial error." Indeed, he might have gone further and denominated the error as prejudicial not only to the rights of the party aggrieved, but in a greater degree destructive of the court itself. The continued existence of courts or of the social organization of which they are a part, rests entirely upon the confidence of the citizen. And when permitted procedure demonstrates a court to have become but a poorly functioning machine, arbitrarily controlled and operated, its usefulness is gone.

Respondent, however, argues that irrespective of the action of the court below, the appellant made no showing that it was prejudiced thereby. In other words, there is no showing that appellant could produce any testimony or evidence to overcome the entries in the book. Respondent cites, in support of his contention, section 475 of the Code of Civil Procedure. Inasmuch, however, as appellant was told by the court, in unmistakable terms, not once, but two or three times, that the court would not permit him to present testimony as to the actual attendance at the theatre, it would have been a useless thing to have presented the witnesses.

Orderly procedure requires that counsel submit to the rulings of the court, and it cannot be commended as good practice that an attorney battle his way into durance, to the end that error be demonstrated. An arbitrary trier of fact might well consider it a contempt if counsel insisted on proceeding against the explicit warning of the court.

In the instant case it is demonstrated that appellant was denied a fair or any opportunity to present the facts upon which his claim rested. And likewise does the case itself demonstrate the futility of the modern short-cut taken at the sacrifice of substantial rights. By a fair and reasonable hearing this entire appeal might easily have been avoided and the controversy forever closed. If plaintiffs had no

evidence to offer it would have been a much quicker way to end the proceeding by ascertaining that condition in the court below.

The judgments are reversed.

Preston, P. J., and Plummer, J., concurred.