[L. A. No. 20583. In Bank. Nov. 26, 1948.]

SARAH J. PALMER, Respondent, v. CITY OF LONG BEACH, Appellant.

Irving M. Smith, City Attorney, Clifford E. Hayes and Dewey L. Strickler, Deputy City Attorneys, for Appellant.

A. J. O'Connor, George J. Hider and James F. Curtin for Respondent.

TRAYNOR, J.—Plaintiff brought this action for damages against the city of Long Beach for injuries resulting from a fall on a public sidewalk.

Plaintiff was walking along the west side of Pine Avenue, in a residential district on a dark night in February, 1944, when the toe of her shoe caught in a hole in the sidewalk, and she fell, sustaining severe injuries. The area was not illuminated, and palm trees lined the sidewalk. Neither plaintiff nor her granddaughter, an adult who accompanied her, was able to see the sidewalk as they walked. Plaintiff testified that this was the first time she had used the sidewalk on the west side of the avenue and that she did not know of its condition at the time she fell. Testimony regarding the depth of the hole was conflicting. Plaintiff and her granddaughter testified that it was at least 3 inches deep. Plaintiff described it as being 8 or 9 inches wide and 10 to 11 inches long. Her granddaughter stated that she was able to place her hand into the hole. A resident of the neighborhood, who was present when the sidewalk was repaired after the accident, testified that part of the hole was a quarter of an inch, part half an inch deep, "something like that," but no part as deep as an inch. The city street department employee who repaired the hole after the accident testified that it was not "over three-quarters of an inch" deep, or "an inch anyway" at the deepest point. Photographs of the sidewalk were introduced into evidence by plaintiff, and according to the testimony they accurately depicted its condition at the time of the accident. The city did not have actual notice of the defective condition of the sidewalk at the time of or before the accident. There was testimony, however, that the sidewalk at the place where plaintiff fell had been in bad condition for a number of years and had holes of varying depths. Several years before the accident the hole had been filled by a person living near by.

The cause was tried before a jury, and judgment was entered for plaintiff in the sum of $5,000. Defendant appeals. Defendant contends that the trial court erred in denying its motion for judgment of nonsuit, in denying its motion for a directed verdict, and in admitting a stipulation of facts in evidence over objection.

█ Plaintiff's cause of action is based upon the Public Liability Act of 1923 (Stats. 1923, p. 675; 2 Deering's Gen. Laws, 1944, Act 5619), which provides that cities are liable for injuries to persons resulting from the dangerous or defec-

tive condition of public streets, highways, and property, where the governing or managing board or other officer or person having authority to remedy such condition had knowledge or notice of it and failed or neglected for a reasonable time thereafter to remedy it or to take steps reasonably necessary to protect the public. Although defendant did not have actual knowledge or notice of the defective condition of the sidewalk, constructive notice of such a condition and of its dangerous character meets the requirements of the act. (*Boyce* v. *San Diego High School District*, 215 Cal. 293, 295 [10 P.2d 62]; *Nicholson* v. *City of Los Angeles*, 5 Cal.2d 361 [54 P.2d 725]; *Dawson* v. *Tulare Union High School*, 98 Cal.App. 138, 142 [276 P. 424]; *Kirack* v. *City of Eureka*, 69 Cal.App.2d 134, 140 [158 P.2d 270]. See 9 Cal.Jur. 10-Yr. Supp., § 185, p. 633.) Two questions therefore arise as to defendant's liability: Was the hole into which plaintiff stepped a dangerous defect, and did the city have constructive notice thereof? The jury decided both questions adversely to defendant.

Defendant contends that the foregoing issues should not have been submitted to the jury and that therefore the trial court erred in denying its motion for judgment of nonsuit and its motion for a directed verdict. Relying upon *Nicholson* v. *City of Los Angeles*, 5 Cal.2d 361 [54 P.2d 725], *Whiting* v. *City of National City*, 9 Cal.2d 163 [69 P.2d 990], and *Balmer* v. *City of Beverly Hills*, 22 Cal.App.2d 529 [71 P.2d 854], defendant argues that this court should rule as a matter of law that the hole constituted a minor defect and that the long-continued existence of the defect was insufficient alone to give constructive notice to the city.

Defendant's reliance upon the foregoing cases is based upon the erroneous assumption that the evidence herein, although conflicting, clearly establishes that the depth of the hole was not greater than an inch. Defendant contends that despite plaintiff's evidence that the hole was at least 3 inches deep, other evidence, including the photographs of the sidewalk, conclusively establishes that the hole was not over an inch deep and that, in any event, the testimony of plaintiff's witnesses is so uncertain and unreliable that it does not constitute substantial evidence.

Defendant's contention goes to the probative value of the evidence and the credibility of the witnesses, matters within the province of the jury to determine. (Code Civ. Proc., §§ 1847, 2061.) As stated by the court in *Balkwill* v. *City of Stockton*, 50 Cal.App.2d 661, 667 [123 P.2d 596]: ''In

spite of the fact that defects in sidewalks may be so slight or trivial as to create mere questions of law regarding their dangerous nature, it is, nevertheless, true that when the evidence is so conflicting that different conclusions may reasonably be drawn regarding the dangerous character of the defects, or concerning the question of notice thereof on the part of the officers of the city, the determination of such questions should be left to the jury and their conclusions should not then be disturbed on appeal. (*Ackers* v. *City of Los Angeles*, 40 Cal.App.2d 50 [104 P.2d 399]; 25 Am.Jur. 876, sec. 589; 119 A.L.R. 168, note; 9 Cal.Jur., 10-Year Supp., 641, sec. 194.)'' (See also *George* v. *City of Los Angeles*, 11 Cal.2d 303, 308 [79 P.2d 723]; *Laurenzi* v. *Vranizan*, 25 Cal.2d 806, 812 [155 P.2d 633]; *Eastlick* v. *City of Los Angeles*, 29 Cal.2d 661, 672-673 [177 P.2d 558]; *Lorraine* v. *City of Los Angeles*, 55 Cal.App.2d 27, 30 [130 P.2d 140]; *Kirack* v. *City of Eureka*, 69 Cal.App.2d 134, 140 [158 P.2d 270]; *Jones* v. *City of Los Angeles*, 74 Cal.App.2d 183 [168 P.2d 480].) It cannot be held as a matter of law that the defect was so minor that the question of the city's liability should not have been submitted to the jury. The trial court did not err, therefore, in denying defendant's motion for judgment of nonsuit and its motion for a directed verdict.

Defendant relies heavily on the contention that its counsel did not agree to a stipulation dictated into the record by the trial court. The record reveals the following:

''THE COURT: Will counsel come to the bench?

'' (Recess taken, jury duly admonished and consultation between court and counsel at the bench.)

''THE COURT: Stipulated that James Kincaid at and prior to the time of the accident involved in this case was Superintendent of Streets of the City of Long Beach; that at the time of the accident there were about 16 employees working under him in the street department; that the City had adopted and did pursue, as a standard of conduct with respect to the maintenance and repair of its streets the following rule, namely: That whenever any defect in a sidewalk actually was known or reported to the Department of the same to the depth of one-half inch or more, it was repaired by the city; that the city was divided into five areas or districts for the purpose of maintenance and repair; that because the Street Department was at that time shorthanded, no particular individuals were then assigned to the task of inspecting these respective areas, but that it was the duty of all of the

employees of said Department from day to day, as they pursued their various duties, to make an observance of the city streets to ascertain if there were any such defects in the sidewalk as needed repair, pursuant to the above-mentioned standard of conduct; that Mr. Kincaid, Superintendent of Streets, was the official charged with the performance or supervision of the performance of the duties above-mentioned.

"MR. HAYES: I desire to object to the introduction of any evidence on the ground that it is incompetent, irrelevant and immaterial and doesn't tend to show whether or not this was a dangerous or defective condition; is merely a standard set up to prevent further deterioration of the street and was not to be taken as an indication in any manner that we believed it to be a dangerous or defective condition, but was merely a precautionary measure that has nothing to do under the law to set up any standard other than is defined in the law itself. It does not prove or disprove any of the issues involved in this case.

"THE COURT: Would it not be admissible as an admission on the part of the defendant as to what was reasonably necessary for the safe maintenance of the street?

"MR. HAYES: No. We can add one thing. I said in my instructions—I don't concede that a half an inch hole is dangerous or defective and I have so instructed the men. I instruct them to prevent further deterioration. When they are getting that deep, to prevent further deterioration, they had better make repairs because they indicate that something is missing and given way. That is my instruction.

"THE COURT: Why isn't the adoption and pursuit of a standard of conduct evidence against the defendant as to what is necessary to proper maintenance and safe maintenance?

"MR. HAYES: We are in this situation: If the law does not impose upon us that degree of care and they have gone beyond the requirements of the law in keeping our streets in condition, then maybe I have gone too far in my instructions. I have gone much farther than I think the law requires because of the early cases indicating that by the minor defect there was liability on the part of the city for injuries resulting from them. They have come along in *Whitney* v. *National City* [*Whiting* v. *City of National City*, 9 Cal.2d 163 (69 P.2d 990)] and relaxed the rule. If, by our conduct and extra precautions we are penalizing the city, I don't think that is necessary.

"The Court: It begs the question which is this: Does your established rule of conduct not operate by way of an admission as to what is necessary in the way of safe street maintenance, and when you say it is not and therefore it does not prove anything, you come around in a circle. Does not the city's adoption and pursuit of that standard of conduct operate by way of admission as to what is reasonably necessary and proper to the end of safety?

"(Further discussion omitted.)

"The Court: If I understand you correctly, it is now stipulated that aside from the testimony of Mr. Kincaid and Mr. Fell, the plaintiff has no further evidence to offer in chief, and it is stipulated that the defendant may and will go forward forthwith with the proof of its case and without prejudice to the making of any motion for non-suit if so advised when the plaintiff shall have finally rested? Is that correct?

"Mr. O'Connor: Yes.

"Mr. Hayes: Yes.*

"(Jury resumes their place in the jury box.)"

At the close of plaintiff's case, the following appears in the record:

"Mr. O'Connor: That is all.

"With the stipulation plaintiff will rest, with the stipulation that we have.

"The Court: Do you want that read now?

"Mr. O'Connor: I would appreciate it, your Honor.

"The Court: Counsel for defendant adequately stated into the record such objections as you had to the stipulated facts?

"Mr. Hayes: Well, I had better restate my position at this time. First, that the contents of the proposed stipulation with reference to the repairs of the damages as to sidewalks, are merely instructions to workmen, giving them some idea as to what types of holes, what to look for to indicate if sidewalks are beginning to deteriorate. They are not a set of rules or standards. Second, that the superintendent of streets has no authority to adopt a set of rules which would give, as a standard for any imposition or determination of the liability of the City, what holes may or may not be dangerous or defective. Third, that the City of Long Beach has the right

---

*Defendant contrasts the plain showing in the record of its assent to this stipulation with the absence of any evidence of its assent to the stipulation dictated into the record by the trial court.

to give instructions to its men to take preventive measures for the repair of its sidewalks which may be, or at a later date become, defective without determining that the hole constitutes dangerous or defective conditions or that there is anything about the hole at the time that the repair is made that it is a dangerous or defective condition.

"May I mix argument with objections? On the further ground it is incompetent, irrelevant and immaterial and does not tend to prove any of the issues in this case. It doesn't tend to prove this particular spot or any other particular spot in the City of Long Beach was in a dangerous or defective condition, calls for a conclusion on the part of Mr. Kincaid or the parties who make the repairs. That states my position as well as the objections.

"THE COURT: The objection is overruled.

"Ladies and gentlemen of the jury, from time to time throughout the case you have heard counsel stipulate that certain things might be done or certain things were true. While statements of counsel ordinarily are to be taken merely as argument or objection and not evidence, when they stipulate to a fact or facts, that establishes those facts for the purposes of the case. Last night in your absence counsel for the respective parties did make a stipulation concerning certain facts, which stipulation will now be read to you by the reporter."

At this point the court reporter read the stipulation to the jury.

Defendant's objection to the stipulation dictated into the record by the trial court is directed at the statement therein that "the City had adopted and did pursue, as a standard of conduct with respect to the maintenance and repair of its streets the following rule. . . ." Defendant concedes that counsel for the city was willing to stipulate that Mr. Kincaid, the superintendent of streets, if called as a witness for plaintiff would testify that he had given certain instructions to his workmen with reference to the maintenance and repair of the streets, but contends that counsel for defendant was unwilling to concede, and did not assent to the trial court's assumption that these instructions constituted a "standard of conduct" adopted and pursued by the city.

■ Unless the trial court, in its discretion, permits a party to withdraw from a stipulation (see 23 Cal.Jur. § 14, p. 829; 161 A.L.R. 1161, note; 60 C.J., § 98, p. 91; 9 Wigmore on Evidence (3d ed.), § 2590, p. 588), it is conclusive upon the parties, and the truth of the facts contained therein cannot

be contradicted. (*Woodward* v. *Brown*, 119 Cal. 283, 295 [51 P. 2, 542, 63 Am.St.Rep. 108] ; *Haese* v. *Heitzeg*, 159 Cal. 569, 575 [114 P. 816] ; see 23 Cal.Jur., § 12, p. 826 ; 2 Jones, Commentaries on Evidence, § 257, p. 454.) Hence, if the parties assented to the stipulation in question, defendant cannot now contend that a "standard of conduct" was not adopted by the city with respect to the maintenance and repair of its streets.

■ A stipulation is an agreement between counsel respecting business before the court (Bouv. Law Dict., Baldwin's Century Edition), and like any other agreement or contract, it is essential that the parties or their counsel agree to its terms. (See, *Back* v. *Farnsworth*, 25 Cal.App.2d 212, 219-220 [77 P.2d 295] ; 23 Cal.Jur. § 9, p. 822 ; Civ. Code, §§ 1550, 1565 ; 60 C.J. § 3, p. 40.) As provided in section 283 of the Code of Civil Procedure : "An attorney and counselor shall have authority : 1. To bind his client in any of the steps of an action or proceeding by his agreement filed with the clerk, or entered upon the minutes of the court, and not otherwise. . . ." ■ While it is true that in the instant case, the purported stipulation was entered in the minutes immediately after consultation between court and counsel (see, *Borkheim* v. *North British & M. Ins. Co.*, 38 Cal. 623, 628), there is no evidence that defendant ever agreed to the stipulation as worded either at the time the consultation took place or at the time the stipulation was dictated into the record. Had defendant's counsel remained silent after dictation of this stipulation, his passive acquiescence would constitute assent. (*Low Estate Co.* v. *Lederer Realty Co.*, 39 R.I. 422, 429 [98 A. 180]. See also, *Ward* v. *Goetz*, 33 Cal.App. 595, 597 [165 P. 1022] ; *Wilson* v. *Mattei*, 84 Cal.App. 567, 571 [258 P. 453].) He did not remain silent, however, but immediately following the court's dictation, objected to the admissibility of the stipulation and argued that no "standard of conduct" had been adopted by the city, and that what the court termed a "standard of conduct" merely consisted of instructions given to workmen by the Superintendent of Streets. The argument between the court and defendant's counsel shows clearly that the court was dictating into the record over the protestations of defendant's counsel, the court's own version of the facts and the court's own conclusion that the superintendent's instructions to workmen constituted a "standard of conduct" adopted by the city.

In the absence of evidence that defendant consented to the stipulation, it can hardly be maintained that there was an "agreement . . . entered upon the minutes of the court" as contemplated by the foregoing section of the Code of Civil Procedure. Entry of the purported stipulation in the minutes upon request of plaintiff's counsel did not bind defendant since "it was not in the power of the Court, nor any one else, without [defendant's] consent, or that of [its] attorney, to make it binding." (*Borkheim* v. *North British & M. Ins. Co., supra,* 38 Cal. 623, 628.)

It is contended, however, that since the record is silent as to what occurred between the court and counsel at the bench before the court dictated the stipulation, it must be assumed that the parties agreed to it at that time and that defendant was thereafter simply objecting to its admissibility in evidence. The only recital in the record from which it could be assumed that defendant assented to the stipulation is the court's statement to the jury that "Last night in your absence counsel for the respective parties did make a stipulation which stipulation will now be read to you by the reporter." This statement, implying as it does that defendant assented to the stipulation as worded, is not supported by the record and is therefore not conclusive on this issue. (See, *Sheppard* v. *Sheppard,* 15 Cal.App. 614, 618-619 [115 P. 751].) Counsel for defendant objected not only to the evidentiary use of the stipulation but also interposed a specific objection "that the contents of the proposed stipulation with reference to the repairs of the damages as to sidewalks, are merely instructions to workmen, giving them some idea as to what type of holes, what to look for to indicate if sidewalks are beginning to deteriorate. They are not a set of rules or standards." In the light of this objection and the argument between the court and defendant's counsel regarding the terms and effect of the purported stipulation, it is not reasonable to assume that counsel for defendant had previously agreed to the stipulation and was thereafter simply objecting to its admissibility in evidence. Unless it is clear from the record that both parties assented, there is no stipulation. (*Borkheim* v. *North British & M. Ins. Co., supra,* 38 Cal. 623.) This rule is particularly pertinent when, as here, the purported stipulation gave up the basic defense upon which defendant relied, namely, that it violated no reasonable standard of conduct when it failed to repair the defect in question. (See, *Fresno*

*City High School Dist.* v. *Dillon,* 34 Cal.App.2d 636, 647 [94 P.2d 86].)

In view of an attorney's duty to his client it should not lightly be assumed that he stipulated away his case. Certainly, defendant's willingness to stipulate that Mr. Kincaid would give certain testimony if called as a witness does not justify committing defendant to the trial court's views of the legal significance of that testimony in the absence of evidence that defendant agreed thereto. ▌ Stipulations must be given a reasonable construction with a view to giving effect to the intent of the parties and "the language used will not be so construed as to give it the effect of an admission of a· fact obviously intended to be controverted, or the waiver of a right not plainly intended to be relinquished, . . ." (*Huegel* v. *Huegel,* 329 Mo. 571, 576 [46 S.W.2d 157], quoting from 36 Cyc. 1291, 1292. See also, *Seale* v. *Ford,* 29 Cal. 104, 108; *City of San Jose* v. *Uridias,* 37 Cal. 339, 345-346; *Orr* v. *Forde,* 101 Cal.App. 694, 699 [282 P. 429] ; *Back* v. *Farnsworth,* 25 Cal.App.2d 212, 220 [77 P.2d 295] ; 23 Cal.Jur., § 11, p. 824; 50 Am.Jur. 609.) As stated by the court in *Theatrical Enterprises, Inc.* v. *Ferron,* 119 Cal.App. 671, 676 [7 P.2d 351] : "It may be conceded that stipulations of fact, where no real controversy of fact appears, should be encouraged, and when entered into, should be strictly enforced. But there should be no sacrifice of substantial rights merely to subserve the constant importuning to speed up trials. The purpose of every trial is to examine into disputed facts. . . . Stipulations are ordinarily entered into for the purpose of avoiding delay, trouble or expense. As a general rule they should receive a fair and liberal construction, in harmony with the apparent intention of the parties and the spirit of justice, and in furtherance of fair trials upon the merits, rather than a narrow and technical one, calculated to defeat the purposes of their execution. (25 R.C.L. 1095.)"

▌ Since there is no evidence that defendant ever agreed to the stipulation, the trial court erred in admitting it in evidence and in causing it to be read to the jury over the objections of defendant's counsel.

This error was prejudicial to the rights of defendant and necessitates reversing the judgment. The stipulation dictated by the trial court related not simply to the facts but to the legal significance of certain facts and bore directly on the basic issue whether the defect in question was dangerous and whether the city in the exercise of reasonable care should have

known about it and repaired it. It was for the jury to formulate the standard by which to determine whether the defect in question was dangerous within the meaning of the Public Liability Act. (*Balkwill* v. *City of Stockton, supra,* 50 Cal.App.2d 661, 667.) The phrase "that the City had adopted and did pursue, as a standard of conduct" carried the clear connotation that the city's own standard of a dangerous defect was a defect of a depth of one-half inch or more and that the city regarded the repair of such defects as reasonably necessary for the safe maintenance of its sidewalks. That the trial judge himself so understood the stipulation, is clear from his argument with counsel, for it was because of this very understanding that he ruled that the stipulation was admissible. Since the city did not enter into the stipulation as worded, it was prejudicial error for the trial court to dictate it into the record as evidence in the case, for the jury was then free to adopt as their own standard of a dangerous defect the very standard that the city purportedly adopted.

The evidence established without conflict that the hole exceeded one-half inch in depth. Therefore, if defendant entered into the stipulation, it thereby admitted its own negligence in failing to repair the hole. As stated by the trial court, the adoption and pursuit of the "standard of conduct" recited in the stipulation was an "admission on the part of the defendant as to what was reasonably necessary for the safe maintenance of the street." Since the other elements of plaintiff's cause of action were clearly proved, upon proof of defendant's negligence by its own admission, its liability under the Public Liability Act would necessarily follow. The effect of the stipulation was, therefore, to remove from dispute the very issues upon which the city's liability depended, namely, whether the defect causing plaintiff's fall was dangerous within the meaning of the Public Liability Act, and whether the city, in the exercise of reasonable care, was under a duty to repair it. Its admission in evidence over the objections of counsel for defendant prevented a fair trial on the merits.

The judgment is reversed.

Gibson, C. J., Shenk, J., Edmonds, J., and Spence, J., concurred.

CARTER, J.—I dissent.

The majority of this court reverses a judgment for plaintiff for personal injuries suffered as the result of a dangerous

and defective condition of defendant city's street solely upon the ground that a stipulation was improperly admitted in evidence, or perhaps more accurately stated, that a purported stipulation was not such because it was not agreed to by defendant. The basic fallacy in that holding is that the record shows that defendant *did agree* to (or it must be assumed it did) the *facts* contained in the stipulation, and its only objection or lack of assent was to the *admissibility in evidence* of those facts; or in other words that the facts stated in the stipulation were not admissible in evidence.

It will be noted from the majority opinion that the stipulation had to do with matters within the knowledge of James Kincaid, the city superintendent of streets, namely, the instructions, rules or practice of the city with regard to the repair of all defects in the streets of over one-half inch in depth. The first place in the record that Kincaid comes into the picture is near the close of plaintiff's case. Plaintiff's counsel stated that he would like to "call" Kincaid to the witness stand. To the court's inquiry of whether he was present there was no response. In view of that state of affairs plaintiff's counsel stated that he wanted "to call a man [clearly referring to Kincaid] whose duty it was to inspect any repairing of the sidewalk." To the court's query of whether he had another witness he could "put on" at that time (that is, that such was necessary for Kincaid was not present), plaintiff answered in the affirmative and called another witness to the stand. After that witness testified the record is *silent as to what occurred.* It merely appears that counsel was called to the bench out of the hearing of the jury and the court without ado recited the stipulation. Clearly there must have been a preliminary discussion between counsel and the court, and in the absence of the nature thereof we must assume that it followed the usual and ordinary course, that is, that there was no necessity of calling Kincaid as a witness for there was no dispute as to what his testimony would be with reference to the practice or rule of the city in regard to repairing its streets; the only question would be the admissibility of his testimony. Not only should we make that assumption but it is borne out by the previous unavailing calling of Kincaid, defendant's failure to call Kincaid to testify differently, and the jury instruction offered by defendant to the effect that the fact the city "may have adopted a standard of conduct with regard to defects in sidewalks which should be repaired, is not to be taken as evidence by you that said defects *necessarily* consti-

tute dangerous and defective conditions which would render the City liable in damages in event of accidents occurring at the location of such defects.'' The instruction clearly indicates defendant's assumption that while the *facts* of the existence of the rule were *true*, yet it does not necessarily show a dangerous condition. That is undoubtedly the law, and it shows that the only thing with which defendant was concerned was the admissibility of such a rule in evidence. It had been held admissible over its objection and it desired to have the true character of its value as evidence explained to the jury.

The objections to the stipulation both at the time it was stated by the court out of the presence of the jury and when it was read to them by the reporter, went only to the admissibility of the rule, not the fact of its existence. At first defendant's counsel stated that he objected, ''to the introduction *of any evidence* on the ground that it is incompetent, irrelevant and immaterial and *doesn't tend to show whether or not this was a dangerous or defective condition*; is merely a *standard* set up to prevent further deterioration of the street and was not to be taken as an indication in any manner that we believed it to be a dangerous or defective condition, but was merely a precautionary measure that has nothing to do under the law to set up any standard other than is defined in the law itself. It does not prove or disprove any of the issues involved in this case.'' All of the foregoing argument goes solely to the issue of whether the rule was for the purpose of preventing a deterioration of the streets or for the safety of pedestrians. *That was a pure legal question relating to its admissibility.* On its face the rule does not purport to be limited to preservation of the streets. It was broad enough to embrace both purposes. If counsel believed that the rule was so limited it was incumbent on him to establish that claim. All the objections of counsel to the stipulation are along the same line. None of them questions the existence of the rule. They are solely concerned with its *purpose* and on that basis alone the claim of inadmissibility is made. Certainly it is manifest that the trial court and opposing counsel understood defendant's objection as being no more comprehensive than that the evidence was not admissible. If plaintiff's counsel had not been so misled he could have called Kincaid and had him testify.

On the issue of the admissibility of the rule, the majority opinion has nothing to say. It was undoubtedly admissible and I am satisfied with the following discussion and authorities presented on that subject in the decision by the District

Court of Appeal in this case (83 A.C.A. 582 at pp. 590-592 [189 P.2d 62]): "Evidence may be given upon a trial of the act, declaration or omission of a party. (Code Civ. Proc., § 1870, subd. 2.) Any fact is admissible in evidence from which the facts in issue are logically inferable. (Code Civ. Proc., § 1870, subd. 15.) It is an elemental rule of evidence that the statements or conduct of a party tending to refute his position are admissible. Mr. Justice Holmes, in *Texas P. R. Co.* v. *Behymer*, 189 U.S. 468 [23 S.Ct. 622, 47 L.Ed. 905], said that: 'What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it is usually complied with or not.' Mr. Wigmore says that, 'the regulations adopted by an employer for the conduct of a factory or a transportation system, may be some evidence of his belief as to the standard of care required, and thus of the negligent nature of an act violating those rules.' (2 Wigmore on Evidence (3d ed.) § 282, p. 132.) Shearman and Redfield say that, 'It has been said that "a violation of rules previously adopted by a defendant in reference to the safety of third persons has generally been admitted in evidence as tending to show negligence of the defendant's disobedient servant for which the defendant is liable," ' citing *King* v. *Interborough R. T. Co.*, 233 N.Y. 330, 333 [135 N.E. 519]. (3 Shearman and Redfield on Negligence, § 506, p. 1281.)

"Evidence of a custom of a defendant and its violation is held admissible as some evidence of negligence. *Scott* v. *Gallot*, 59 Cal.App.2d 421 [138 P.2d 685], was an action arising out of alleged negligence of the defendant. It was held that a motion for a new trial was properly granted because the court had erroneously stricken evidence introduced by the plaintiff of a custom of the defendant which it had violated. (See, also, *Thomas* v. *Southern Pacific Co.*, 116 Cal.App. 126, 131 [2 P.2d 544]; *Mace* v. *Watanabe*, 31 Cal.App.2d 321, 323 [87 P.2d 893]; *Burke* v. *John E. Marshall, Inc.*, 42 Cal.App.2d 195, 203 [108 P.2d 738].)

"An ordinance of a municipality prescribing rules and regulations for the conduct of its employees is admissible in evidence as an act or declaration of a party concerning a matter involved in the suit. (*Jordan* v. *City of Lexington*, 133 Miss. 440 [97 So. 758]; *Hebenheimer* v. *City of St. Louis*, 269 Mo. 92 [189 S.W. 1180]; *McLeod* v. *City of Spokane*, 26 Wash. 346 [67 P. 74]; *City of Indianapolis* v. *Gaston*, 58 Ind. 224; *Smith* v. *City of Pella*, 86 Iowa 236 [53 N.W. 226].)

"We are dealing here with rules and regulations of the party itself. They are admissible, as they are virtually admissions, in the language of the trial judge, 'as to what was reasonably necessary for the safe maintenance of the street.' (2 Wigmore on Evidence (3d ed.) § 462, p. 501.)

"Appellant engages in an extended argument and citation of cases from other jurisdictions to the effect that rules and regulations of a railroad company for the conduct of its servants in the operation of its trains should not be admitted in evidence in this state. It says that even if such rules should be held admissible the principle should not be extended to rules and regulations of a municipal corporation for the conduct of its servant in the maintenance of its streets. Counsel apparently overlooked the recent case of *Simon* v. *City and County of San Francisco,* 79 Cal.App.2d 590 [180 P.2d 393], where the court stated (pp. 597, 598) : 'Defendants argue that the rules of a carrier are not admissible and may not be considered on the issue of a carrier's negligence where the injured party has no knowledge of the rules and did not rely upon them. That was undoubtedly the rule announced in *Smellie* v. *Southern Pac. Co.,* 128 Cal.App. 567 [18 P.2d 97], by the District Court of Appeal, but, the Supreme Court, in denying a hearing in that case added the following comment (p. 583) : "Such denial, however, shall not be construed as an approval by this court of that portion of the opinion of the District Court of Appeal which holds that admission of evidence of the rules adopted by the defendant for the government of its business was incompetent and prejudicial." In thus qualifying the appellate court opinion the Supreme Court undoubtedly had in mind its earlier decision in *Gett* v. *Pacific Gas & Elec. Co.,* 192 Cal. 621 [221 P. 376]. In that case, the court, after referring to the action of the motorman of defendant's streetcar in suddenly stopping his car in such manner as to blockade a cross-street stated (p. 625) : ". . . his act in so doing was in violation of an operating rule of the defendant, forbidding its employees to stop the cars so as to block cross-streets or crosswalks. The existence of this rule, of course, did not render its violation by defendant's employees negligence *per se,* but it was a circumstance proper to be considered by the jury in determining whether or not they were negligent."

" 'In the more recent case of *Nelson* v. *Southern Pacific Co.,* 8 Cal.2d 648 [67 P.2d 682], the Supreme Court negatively reaffirmed the doctrine of the Gett case in the following language (p. 654) : "It cannot be said that the exclusion of the

respondent's time table was erroneous. While the rules of operation are admissible (*Gett* v. *Pacific Gas & Elec. Co.*, 192 Cal. 621 [221 P. 376], . . .), we fail to see the materiality of the time table to the situation under scrutiny.'' It follows that the rules were admissible and that it was a question of fact for the jury and not a question of law for the court to determine whether the conduct of the motorman, under the circumstances, constituted negligence.' (See 3 Shearman and Redfield on Negligence, § 481, p. 1202); *Chicago & A. Ry. Co.* v. *Eaton*, 194 Ill. 441 [62 N.E. 784, 88 Am.St.Rep. 161]; *Stevens* v. *Boston Elevated Ry. Co.*, 184 Mass. 476 [69 N.E. 338]; *Bilodeau* v. *Fitchberg & L. St. Ry. Co.*, 236 Mass. 526 [128 N.E. 872]; *McNeil* v. *New York, N. H. & H. R. Co.*, 282 Mass. 575 [185 N.E. 471].)''

Finally, even assuming it was error to admit the stipulation it was not prejudicial. The jury was fully instructed upon the correct standard with reference to defects in streets. For illustration it was advised: ''A dangerous or defective condition, as denoted by the use of that term in these instructions means a condition in the sidewalk in question that would have caused it to be not reasonably safe for persons who, with ordinary care for their own safety, used said sidewalk, or might have used it for the purpose intended, or as expressly or impliedly invited, or as permitted by the controlling authority.

''A municipality is not bound to maintain its sidewalks in a condition to preclude the possibility of accident. It is not an insurer of the safety of the users of public sidewalks. *The duty imposed by law upon the City is to exercise ordinary care to maintain its public sidewalks in a reasonably safe condition for their use in a proper manner.* The City has the same right as an individual to assume that in using the sidewalk the public will use ordinary care and caution.

''A duty is imposed upon officers of a municipality, whose business requires them to inspect and repair sidewalks to exercise due care to discover defects which may be reasonably anticipated.'' It was given the general standard and it is not to be supposed that it adopted the ''½ inch hole'' rule referred to in the stipulation.

As before stated, the record discloses that no objection was made by counsel for defendant to the facts stated in the stipulation. At no time did he state that he had not agreed or did not agree to stipulate to all of the facts contained in the stipulation as dictated by the trial judge to the reporter and read by the reporter to the jury. A reading of the objections and

argument of counsel for defendant to the stipulation can leave no doubt but that counsel's only objection to the stipulation was that it did not constitute competent evidence of defendant's negligence because the instructions, rules or practice of the city with regard to the repair of defects in streets of over one-half inch in depth was not competent evidence that a hole of that depth created a dangerous and defective condition which would render the city liable to anyone injured thereby. Counsel's position is made unquestionably clear in the following statements made at the time the stipulation was introduced in evidence: "MR. HAYES: Well, I had better restate my position at this time. First, that the contents of the proposed stipulation with reference to the repairs of the damages as to sidewalks, are merely instructions to workmen, giving them some idea as to what types of holes, what to look for to indicate if sidewalks are beginning to deteriorate. They are not a set of rules or standards. Second, that the superintendent of streets has no authority to adopt a set of rules which would give, as a standard for any imposition or determination of the liability of the City, what holes may or may not be dangerous or defective. Third, that the City of Long Beach has the right to give instructions to its men to take preventive measures for the repair of its sidewalks which may be, or at a later date become, defective without determining that the hole constitutes dangerous or defective conditions or that there is anything about the hole at the time that the repair is made that it is a dangerous or defective condition.

"May I mix argument with objections? On the further ground it is incompetent, irrelevant and immaterial and does not tend to prove any of the issues in this case. It doesn't tend to prove this particular spot or any other particular spot in the City of Long Beach was in a dangerous or defective condition, calls for a conclusion on the part of Mr. Kincaid or the parties who make the repairs. That states my position as well as the objections." In view of the foregoing there is clearly no justification for the statements in the majority opinion to the effect that counsel for defendant did not agree to the facts stated in the stipulation and that the burden was on the plaintiff to prove counsel's assent to such facts before the stipulation was introduced in evidence. Of course, it is obvious that there could be no stipulation of facts unless counsel for both sides assented thereto, and the discussion in the majority opinion in regard to the stipulation is talk about

something which did not exist if the statements in the majority opinion are correct.

It was certainly incumbent upon counsel for the defendant to in some manner make known to the court and counsel for plaintiff that he did not agree to the truth of the facts stated by the court in the stipulation if any of those facts were not in accord with the truth, or at least in accord with what Kincaid would have testified to had he been called as a witness. I repeat again that at no time did counsel for defendant assert that any of the facts contained in the stipulation were untrue or that he did not agree to stipulate that if Kincaid were called as a witness he would testify to all of said facts.

In view of the situation as above narrated, there can be no question but that the stipulation as read by the trial judge to the reporter and reread by the reporter to the jury was agreed to by counsel for defendant, and in view of the rules of law which I have heretofore stated herein, there can be no question but that the stipulation was admissible in evidence.

Since the only ground stated in the majority opinion for the reversal of the judgment is that the court committed error in submitting to the jury a stipulation containing facts which were not agreed to by counsel for defendant, and since this ground finds no legal or factual basis in the record before us, the conclusion reached in the majority opinion is unsound.

It must necessarily follow that the judgment should be affirmed.

Schauer, J., concurred.

Respondent's petition for a rehearing was denied December 23, 1948. Carter, J., and Schauer, J., voted for a rehearing.